Filed 6/13/11 reposted to correct file date and signature spelling (no change to opn. text)

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S176923 |
| v. | ) | |
| | ) | Ct.App. 4/3 G036560 |
| QUANG MINH TRAN, | ) | |
| | ) | Orange County |
| Defendant and Appellant. | ) | Super. Ct. No. 01WF0544 |
| _____ | ) | |

The California Street Terrorism Enforcement and Prevention Act (the STEP Act; Pen. Code, § 186.20 et seq.)[1] criminalizes active participation in a criminal street gang (§ 186.22, subd. (a)).  A criminal street gang is any ongoing association that has as one of its primary activities the commission of certain criminal offenses and engages through its members in a "pattern of criminal gang activity."  (§ 186.22, subd. (f); see *People v. Loeun* (1997) 17 Cal.4th 1, 4.)  A pattern of criminal gang activity is "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more" specified criminal offenses within a certain time frame, "on separate occasions, or by two or more persons" (the "predicate offenses").  (§ 186.22, subd. (e); see *Loeun*, at p. 4.)  We hold that a predicate offense may be established by evidence of an offense the defendant committed on

---

[1]     All further undesignated statutory references are to the Penal Code.

a separate occasion. Further, that the prosecution may have the ability to develop evidence of predicate offenses committed by other gang members does not require exclusion of evidence of a defendant's own separate offense to show a pattern of criminal gang activity.

## I.

On May 6, 1997, Duc Vuong, a member of OPB (Oriental Play Boys), a criminal street gang, was accosted at a gas station by members of the rival criminal street gang VFL (Vietnamese for Life). The VFL members fled when Vuong fired a warning shot at their car. Later that day, three armed and masked men chased Vuong through his apartment complex, shooting at him and wounding him in the shoulder. A short time later, two masked men fired shots at 18-year-old Lon Bui as he was crossing the street to the apartment complex, killing him. Bui was not a member of any gang.

Qui Ly, a member of V (Vietnamese Boys), a gang affiliated with VFL, testified about the attacks. He stated defendant Quang Minh Tran was a "shot-caller" for VFL. Defendant called Ly a few hours after Vuong fired the warning shot, telling Ly he needed guns to retaliate against OPB for the disrespect Vuong had shown VFL. Ly brought two guns to a meeting with defendant and several other V and VFL members. Defendant armed himself with a TEC-9 automatic weapon, choosing it for himself because it tended to jam after a round was fired and he knew how to clear it. They drove to Vuong's apartment complex, where Ly, defendant and "Uncle Dave," another VFL member, donned masks and went to look for Vuong. They found him attempting to retrieve something from the trunk of his car. All three men began shooting at Vuong, who ran to his apartment, chased by defendant and his companions. Someone inside the apartment opened the door, kicking it closed after Vuong ran inside. One of the men chasing Vuong kicked the door open, fired several shots into the apartment,

2

and ran off. Vuong's only injury was a bullet graze to his shoulder. Defendant and Ly ran to the front gate of the apartment complex where they saw Bui. Defendant said, "That's him, that's him, that's Play Boy," apparently believing Bui was a member of OPB. Defendant then crouched, took aim, and shot Bui in the back as Bui attempted to run away. When defendant later learned the man he killed was not an OPB member, he responded, "Fuck it, like oh well."

Other evidence also linked defendant to the attacks on Vuong and Bui. Hanh Dam, a V member, testified that a few days after Bui's murder, defendant warned him to be careful if he saw any OBP members, telling Dam about the incident at the gas station, explaining that defendant had learned where Vuong lived, and telling Dam "they" had shot at Vuong and killed Vuong's friend. The bullet that killed Bui was consistent with a bullet fired from a TEC-9, and was of the same make as several live rounds recovered from the apartment complex that could have been ejected from a TEC-9 if the weapon had jammed or misfired. A witness who heard shooting saw several men run out of the complex and jump into cars. One of the cars, a burgundy four-door Acura with tinted windows and shiny chrome wheels, met the description of the car defendant drove at that time.

Officer Ronnie Echevarria, a police expert on criminal street gangs, was familiar with VFL, V and OBP, and with the members of each gang. Echevarria testified he knew defendant and knew that on May 6, 1997, defendant was an active participant in VFL, a gang that engaged in extortion, prostitution, robberies, and burglaries as its primary activities. Echevarria was also familiar with gang culture. He stated that respect is of paramount importance to gangs, and that gang members will shoot members of a rival gang to enhance the reputation of their own gang, to benefit their gang's recruitment processes, and to send the message that gang members will react violently to acts of disrespect committed against the gang.

3

To establish the predicate offenses required to show a pattern of criminal gang activity, Echevarria testified about Noel Jesse Mata, a VFL member who in 1996 shot three men he believed to be members of OPB to retaliate for the 1992 death of another VFL member. Over defendant's objection, Echevarria also testified about a series of extortions defendant and several other VFL members had undertaken in 1993 and 1994 against Vietnamese businesses. Echevarria stated that VFL members had fired shots into some businesses and had made threats against others. Defendant, defendant's brother, and another VFL member had been arrested and prosecuted as the result of a "sting" in which a cooperating business owner paid protection money to defendant. The prosecution also provided the jury with certified copies of court records establishing that Mata had been convicted of offenses arising from the 1996 shootings, and that defendant, on a plea of guilty, had suffered a conviction resulting from a 1994 extortion.[2]

Defendant was convicted, following a jury trial, of first degree murder (§ 187, subd. (a)), attempted premeditated murder (§§ 187, subd. (a), 664), and active participation in a criminal street gang (§ 186.22, subd. (a)). The jury also found defendant had personally used a firearm in the commission of a felony or attempted felony (§ 12022.5, subd. (a)) and had committed the murder and the attempted murder for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)). The trial court sentenced defendant to a term of 25 years to life for murder and a consecutive term of life for attempted murder, adding a 10-year enhancement to each term for the use of a gun and a three-year enhancement to each term for the gang enhancement. It imposed an

---

[2]    Felony extortion is one of the offenses enumerated in section 186.22, subdivision (e).

4

additional consecutive term of three years for active participation in a criminal street gang.  The Court of Appeal modified the judgment to stay the three-year term imposed for active gang participation and affirmed the judgment as modified.

## II.

We have not directly considered whether a defendant's offense on a separate occasion might qualify as a predicate offense to establish a "pattern of criminal gang activity" under the STEP Act.  In *People v. Gardeley* (1996) 14 Cal.4th 605, 625, however, we held a predicate offense may be established by evidence of the charged offense (see *People v. Loeun*, *supra*, 17 Cal.4th at p. 9).  We thus found a predicate offense can be established by proof of an offense committed by the defendant.  That the STEP Act allows a predicate offense to be established by proof of an offense the defendant committed on a separate occasion is implicit in that finding.  We explicitly so hold here.

## III.

Defendant contends that even if the STEP Act allows a predicate offense to be established by evidence of a defendant's offense on a separate occasion, the inherent prejudice in such evidence generally requires its exclusion under Evidence Code section 352, which provides:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Without doubt, evidence a defendant committed an offense on a separate occasion is inherently prejudicial.  (See *People v. Ewoldt* (1994) 7 Cal.4th 380, 404; *People v. Thompson* (1980) 27 Cal.3d 303, 318.)  But Evidence Code section 352 requires the exclusion of evidence only when its probative value is *substantially* outweighed by its prejudicial effect.  "Evidence is substantially more prejudicial than probative . . . [only] if, broadly stated, it poses an intolerable 'risk

5

to the fairness of the proceedings or the reliability of the outcome' [citation]." (*People v. Waidla* (2000) 22 Cal.4th 690, 724.)

In *Ewoldt*, for example, a prosecution for lewd acts committed against a child under the age of 14 years, we concluded that the trial court had not abused its discretion by admitting evidence the defendant had committed other, uncharged lewd acts against the victim and her sister. Although the evidence was prejudicial to the defendant, it was also probative, strongly suggesting a common design or plan. (Evid. Code, § 1101, subd. (b); *People v. Ewoldt*, *supra*, 7 Cal.4th at p. 404.) We identified several factors that might serve to increase or decrease the probative value or the prejudicial effect of evidence of uncharged misconduct and thus are relevant to the weighing process required by Evidence Code section 352.

The probative value of the evidence is enhanced if it emanates from a source independent of evidence of the charged offense because the risk that the witness's account was influenced by knowledge of the charged offense is thereby eliminated. (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 404.) On the other hand, the prejudicial effect of the evidence is increased if the uncharged acts did not result in a criminal conviction. This is because the jury might be inclined to punish the defendant for the uncharged acts regardless of whether it considers the defendant guilty of the charged offense and because the absence of a conviction increases the likelihood of confusing the issues, in that the jury will have to determine whether the uncharged acts occurred. (*Id.* at p. 405.) The potential for prejudice is decreased, however, when testimony describing the defendant's uncharged acts is no stronger or more inflammatory than the testimony concerning the charged offense. (*Ibid.*)

In *Ewoldt*, we concluded that the totality of the circumstances supported the trial court's decision to admit the evidence of the defendant's uncharged criminal acts. And we so concluded even though not all of the listed factors weighed in

6

favor of admitting the evidence.  Thus, we found the evidence admissible although the source of the testimony relevant to the uncharged acts was not wholly independent of the evidence of the charged offense, and the uncharged acts had not resulted in a criminal conviction.  (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 405.)

In cases such as *Ewoldt*, where evidence is admitted under Evidence Code section 1101, subdivision (b), the evidence is probative because of its tendency to establish an *intermediary fact* from which the ultimate fact of guilt of a charged crime may be inferred.  (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 393; *People v. Thompson*, *supra*, 27 Cal.3d at pp. 315-316 & fns. 14, 15.)  In prosecutions for active participation in a criminal street gang, the probative value of evidence of a defendant's gang-related separate offense generally is greater because it provides direct proof of several *ultimate facts* necessary to a conviction.  Thus, that the defendant committed a gang-related offense on a separate occasion provides direct evidence of a predicate offense, that the defendant actively participated in the criminal street gang, and that the defendant knew the gang engaged in a pattern of criminal gang activity.

At the same time, the inherent prejudice from a defendant's separate gang-related offense typically will be less when the evidence is admitted to establish a predicate offense in a prosecution for active participation in a criminal street gang, than when it is admitted to establish an intermediary fact from which guilt may be inferred.  "Prejudice for purposes of Evidence Code section 352 means evidence that tends to evoke an emotional bias against the defendant with very little effect on issues, not evidence that is probative of a defendant's guilt."  (*People v. Crew* (2003) 31 Cal.4th 822, 842.)  As we explained in *People v. Doolin* (2009) 45 Cal.4th 390:  " 'The prejudice that section 352 " 'is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly

probative evidence.' [Citations.] 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors.' " ' " (*Id*. at p. 439.) That the evidence provided direct evidence of some of the elements of the prosecution's case thus does not weigh against its admission. In addition, because the prosecution is required to establish the defendant was an active participant in a criminal street gang and had knowledge of the gang's criminal activities, the jury inevitably and necessarily will in any event receive evidence tending to show the defendant actively supported the street gang's criminal activities. That the defendant was personally involved in some of those activities typically will not so increase the prejudicial nature of the evidence as to unfairly bias the jury against the defendant. In short, the use of evidence of a defendant's separate offense to prove a predicate offense should not generally create "an intolerable 'risk to the fairness of the proceedings or the reliability of the outcome.' " (*People v. Waidla*, *supra*, 22 Cal.4th at p. 724.)

Defendant argues that evidence of a defendant's separate offense on another occasion should not be admitted when it is "cumulative." By this he seems to mean that the evidence should not be admitted when the prosecution has the ability to develop evidence of offenses committed on separate occasions by other gang members. But defendant cites no authority for the argument that the prosecution must forgo the use of relevant, persuasive evidence to prove an element of a crime because the element might also be established through other evidence. The prejudicial effect of evidence defendant committed a separate offense may, of course, outweigh its probative value if it is merely cumulative regarding an issue not reasonably subject to dispute. (*People v. Ewoldt*, *supra*, 7 Cal.4th at pp. 405-406; *People v. Williams* (2009) 170 Cal.App.4th 587, 610-611.) But the prosecution cannot be compelled to " 'present its case in the sanitized fashion suggested by the defense.' " (*People v. Salcido* (2008) 44

8

Cal.4th 93, 147.)  When the evidence has probative value, and the potential for prejudice resulting from its admission is within tolerable limits, it is not *unduly* prejudicial and its admission is not an abuse of discretion.  Further, a rule requiring exclusion of evidence of a defendant's separate offense on the theory the prosecution might be able to produce evidence of offenses committed by other gang members would unreasonably favor defendants belonging to large gangs with a substantial history of criminality.  That the prosecution might be able to develop evidence of predicate offenses committed by other gang members therefore does not require exclusion of evidence of a defendant's own separate offense to show a pattern of criminal gang activity.[3]

That evidence of a defendant's separate offense may be admissible to prove a predicate offense does not mean trial courts must in all cases admit such evidence when offered by the prosecution.  Considerations such as those described in *People v. Ewoldt*, *supra*, 7 Cal.4th at pages 404-405, will still inform the trial court's discretion and in an individual case may require exclusion of the evidence.  Further, although the court need not limit the prosecution's evidence to one or two separate offenses lest the jury find a failure of proof as to at least one of them, the probative value of the evidence inevitably decreases with each additional offense,

---

[3]     *People v. Leon* (2008) 161 Cal.App.4th 149, relied on by defendant, is distinguishable because the court in that case considered only if the evidence was admissible under Evidence Code section 1101, subdivision (b), governing admission of "other crimes" evidence to prove an intermediary fact.  (*Leon*, at pp. 168-169.)  Here, evidence of defendant's offense was admitted to prove an ultimate fact necessary for conviction.  Further, the court in *Leon* found the evidence unduly prejudicial because it was cumulative to other evidence that had already been admitted.  (*Id.* at p. 169.)  *Leon* therefore provides no authority for the argument that evidence of a defendant's separate offense must be excluded if the prosecution has the ability to develop evidence of predicate offenses committed by other gang members.

while its prejudicial effect increases, tilting the balance towards exclusion. And the trial court of course retains discretion to exclude details of offenses or related conduct that might tend to inflame without furthering the purpose for admitting the evidence.

## IV.

Turning to the present case, we find the admission of evidence of defendant's conviction of extortion and related activities in 1993 and 1994 to have been a proper exercise of the trial court's discretion under Evidence Code section 352. The evidence was highly probative on several issues relevant to the charge of active participation in a criminal street gang, providing direct evidence of a predicate offense, that defendant actively participated in VFL, and that defendant knew VFL engaged in a pattern of criminal gang activity. Defendant's conviction of extortion occurred several years before his arrest on the current charges. The probative value of the evidence accordingly was enhanced because the evidence emanated from independent sources that could not have been influenced by knowledge of the charged offenses. (*People v. Ewoldt*, *supra*, 7 Cal.4th at pp. 404-405.) Further, as the prosecution's evidence of predicate offenses consisted only of evidence of the charged offenses, evidence Noel Jesse Mata shot three men in 1996, and evidence of defendant's extortion activities and conviction in 1993-1994, the evidence of defendant's extortion activities and conviction was not particularly cumulative and certainly not so cumulative as to lack probative value.

Nor was the evidence unduly prejudicial. As we have explained, that the evidence tended to establish elements of the prosecution's case did not render it prejudicial for purposes of Evidence Code section 352. (*People v. Doolin*, *supra*, 45 Cal.4th at p. 439; *People v. Crew*, *supra*, 31 Cal.4th at p. 842; *People v. Karis* (1988) 46 Cal.3d 612, 638.) Looking again to the factors identified in *Ewoldt*, because defendant stood convicted of the extortion, there was little danger of

10

confusing the issues by requiring the jury to determine if defendant was guilty of both the charged offenses and the extortion, and no risk the jury might convict defendant to prevent him from escaping punishment for the extortion. The evidence of defendant's extortion activities was less inflammatory than the testimony about the charged offenses (see *People v. Ewoldt*, *supra*, 7 Cal.4th at p. 405): although Officer Echevarria stated that shots were fired during the 1993-1994 extortions, there was no evidence anyone was killed or injured or that *defendant* personally shot at or threatened anyone. And finally, the court gave a limiting instruction, telling the jury evidence of separate criminal acts by gang members could not be considered to prove defendant was a person of bad character or had a disposition to commit crimes.

The probative value of the evidence thus far outweighed its prejudicial effect, justifying the trial court's decision to admit it.

## CONCLUSION

The judgment is affirmed.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**CHIN, J.**
**CORRIGAN, J.**
**BLEASE, J.**[*]

---

[*]     Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Tran

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 177 Cal.App.4th 138
**Rehearing Granted**

_____

**Opinion No.** S176923
**Date Filed:** June 13, 2011

_____

**Court:** Superior
**County:** Orange
**Judge:** Robert R. Fitzgerald*

_____

**Counsel:**

Marleigh A. Kopas, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting, Lise S. Jacobson and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

*Retired judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Marleigh A. Kopas
Post Office Box 528
Ponderay, ID  83852
(310) 455-3651

Collette C. Cavalier
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-2654