Filed 11/5/14  P. v. Burns CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059847 |
| v. | (Super.Ct.No. FSB1302251) |
| LARELL BURNS, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland, and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

On May 29, 2013, defendant Larell Burns, a known Hoover 59th Street (Hoover) gang member was driving with his friend in the West Side Verdugo (WSV) gang area. WSV was a rival gang to Hoover. Burns had visible Hoover gang tattoos and was wearing a hat with a commonly-known Hoover gang symbol displayed on it. When they observed a police car following them, defendant took a gun from his waistband and put it under the passenger's seat. They were stopped by the police and during a search of the vehicle, a loaded nine-millimeter semiautomatic handgun was located under the passenger's seat. After the crime, defendant bragged in a recorded jailhouse conversation that other gang members were "spooked" of him because of the way he acted when he was on the street, and he wore gang colors during his trial.

Defendant was found guilty of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)).[1] The jury also found true the allegation that he committed the crime for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)(A)). In a bifurcated proceeding, after waiving his right to a trial, defendant admitted that he had suffered one prior serious and violent felony offense (robbery) (§§ 667, subds. (a)(1), (c)-(e)(1) & 1170.12, subd. (c)(1)). Defendant was sentenced to 15 years to be spent in state prison.

Defendant makes the following claims on appeal:

1.      The trial court erred by admitting the prior robbery committed by him as a predicate crime to prove the section 186.22, subdivision (b)(1) gang enhancement.

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

2

2.	The evidence was insufficient to support the gang enhancement pursuant to section 186.22, subdivision (b)(1).

We affirm the judgment.

I

FACTUAL BACKGROUND

A. *People's Case-in-Chief*

1.	*Current charges*

In the afternoon on May 29, 2013, San Bernardino Police Officer Byron Clark and his partner Nelson Carrington were on patrol in their marked police vehicle in a high crime area known as WSV gang territory. Officer Clark was part of the gang investigation unit. As they were patrolling on Vine Street in San Bernardino, he observed a white van pull out of the parking lot of a market. The driver failed to utilize his traffic signal when merging into traffic. The van abruptly pulled into the driveway of a home.

The driver, later identified as Raymond Holt, exited the van and appeared to be walking away. Officer Carrington jumped out of the patrol car to apprehend Holt.

Officer Clark approached the passenger's side of the van. Defendant was sitting in the passenger's seat. Defendant was wearing a Houston Astros baseball hat. Officer Clark instructed defendant to exit the van. Officer Clark searched the area around the passenger's seat. Underneath the passenger's seat, he found a loaded nine-millimeter semi-automatic pistol with a round in the chamber. The weapon was positioned with the handle facing toward the front of the car. According to Officer Clark, the gun was

3

positioned as would be expected if someone sitting in the seat had placed it under the seat.

Holt did not respond to a subpoena to testify at trial. He had to be arrested and compelled to come to court.[2] He did not want to testify because he did not want to be a "snitch." Holt had multiple felony convictions which prohibited him from possessing a firearm. He was both living on the streets and in a recovery home for drug addicts.

On May 29, Holt had picked up defendant on the street about 25 minutes prior to their interactions with Officers Clark and Carrington.[3] They had driven together to a liquor store. They were headed back to where they lived. Holt barely knew defendant and had only seen him on one prior occasion. He only gave defendant a ride because defendant had promised him a few dollars for gas.

Holt claimed he was driving a friend's van on that day; it did not belong to him.[4] He did not have a valid license. When he saw the police car following him, he pulled into a nearby driveway in hopes he would not be pulled over because he was afraid his friend's van would be impounded.

---

[2] Holt met with an attorney prior to his testimony. He was advised by the prosecutor that if his testimony differed from what he had told the police, he may be subject to prosecution.

[3] Holt could not explain why they had driven 25 minutes to get to a liquor store.

[4] It was Officer Clark's understanding that Officer Carrington checked the registration for the van and it showed Holt was the registered owner of the van.

As Holt was pulling into the driveway, defendant pulled a gun out of his waistband and put it underneath the passenger's seat. Holt said, "What the fuck are you doing?" Defendant responded, "I don't know what the fuck you are talking about."

Holt would not have let defendant into his van if he had known he was carrying a gun. Holt was upset that defendant did not accept responsibility for the gun; he would have accepted responsibility if it belonged to him. Holt denied he was a gang member and he did not associate with gang members. Holt was adamant he did not own a gun. Holt told Officer Carrington he did not have anything illegal on him or anything in the van and then said "I don't know about him."

The gun was dusted for fingerprints but no useable print could be obtained. The gun was completely hidden under the passenger's seat. Officer Clark did not observe defendant duck down in the passenger's seat while they were following the van.

2. *Gang evidence*

Officer Clark also testified as a gang expert. He had been a member of the San Bernardino Police Department's gang investigation unit since 2010 and had extensive training in gang matters. The unit was responsible for gang suppression, gang intelligence and gang investigation. He interacted with gang members on a daily basis. Officer Clark had interactions with Hoover gang members in San Bernardino.

The Hoover gang had been a part of the Crips gang in 1960. In 1990 it became its own independent gang. The Hoover gang split into various subset gangs. One of the subsets was called "59th" Street named after a street in their home territory in Los Angeles. They adopted the colors orange and blue. They commonly wore clothing and

5

accessories with the Houston Astros logo because their symbol was the letter "H" and they were orange and blue. Hoover gang members oftentimes had "59" tattoos. They also displayed tattoos with the word "Hoover."

Officer Clark outlined gang territories in San Bernardino. He explained that areas west of the 210 freeway in the County were controlled by gangs that had originated in San Bernardino. Gangs that came to San Bernardino - - including the Hoover gang - - were relegated to the east side of the 210 freeway.

Officer Clark explained that the primary activities of the Hoover gang included drug sales, assaults and robberies. In order to show a pattern of criminal activities, Officer Clark testified about crimes committed by known Hoover gang members. Laquain Wiggs had admitted to Officer Clark that he was a Hoover gang member. He had Hoover gang tattoos. Wiggs had been implicated as the person who shot someone in San Bernardino in April 2013. In addition, Wiggs was convicted of grand theft automobile in February 2011. Grand theft automobile benefitted the gang because the gang could use the stolen vehicle to commit other crimes.

Melvin Craig had admitted Hoover gang membership to Officer Clark and had Hoover gang tattoos. He was convicted in July 2009 of being a felon in possession of a firearm. Officer Clark also testified that defendant had committed robbery in 2007 and had been convicted in 2008, as will be discussed in more detail, *post*.

Officer Clark explained how possession of a firearm benefits the gang. He advised the jurors that gang members believe they can gain respect for the gang by creating fear and intimidating rival gang members or citizens in the community. He

indicated that the best way to create fear was to put a gun in someone's face, to rob them or shoot them. The Hoover gang had a reputation for their gang members possessing firearms.

Having a loaded firearm gave a gang member the opportunity to commit robbery or intimidate a rival gang member. Further, if a gang member had a prior felony, it increased the gang member's stature, and showed loyalty to the gang by carrying a gun even though there were potentially serious consequences if caught with a gun. Also, a gang member having a gun increased the benefit to the gang in that it showed the brazenness of the gang and a readiness to commit a crime. In Officer Clark's opinion, gang members who carry firearms do so with the primary purpose of promoting the gang.

Defendant had displayed a Hoover gang sign with his hands in a photograph posted on a social networking site. He had "Hoover" tattooed on his stomach. He had the number 59 tattooed on his throat, behind his ear and on his arms. Defendant also had "TB" tattooed on his neck which was the initials of his gang moniker, "Tiny Black Stro." Officer Clark explained that in order to have these tattoos, defendant would have had to have earned them. His tattoos were evidence that he was a seasoned and active Hoover gang member.

The area where defendant was arrested was WSV territory. Officer Clark explained that members of the WSV gang would recognize defendant's Houston Astros hat and his 59 tattoos as a symbol of the Hoover gang. Officer Clark opined that a person with the hat and these tattoos in WSV territory would be promoting the Hoover gang. It would notify any WSV members that the Hoover gang member was not afraid to enter

7

their territory. It promoted both the gang member's and the gang's status. It would be perceived as a challenge by WSV gang members.

A Hoover gang member carrying a gun in WSV territory would show a message that he was ready to battle. Carrying a gun in WSV territory would benefit the Hoover gang by showing the gang was fearless.

Moreover, carrying a firearm benefitted defendant because it showed that he was fearless, which would increase his stature within the gang.

While defendant was in custody awaiting trial, a phone call between him and his girlfriend or wife was recorded. Defendant wanted her to get a large tattoo of his gang moniker. In another recorded conversation he said: "Nigga its gangbangers, trust me. You think it's just - - it's just fine and dandy. No, trust me. And nigga, I'm – I does a lot, Kenya, when it's from – from when I get locked up niggas know me from squabblin', from all type of shit. You feel me? I does a lot. You know I do a lot. That's how so many motherfuckers know me, and be spooked of me when they see me, or – you know what I'm saying? Because of how I be when I am in the street." Officer Clark explained this last comment meant he was feared on the street.

During the instant trial, defendant had worn a blue shirt with an orange symbol on it. He wore blue tennis shoes instead of dress shoes. Officer Clark again explained that these were the colors of the Hoover gang. Wearing the gang's colors while on trial for an allegedly gang-related crime would gain him the "ultimate respect" of other Hoover gang members.

8

Officer Clark determined that defendant was an active Hoover gang member based on defendant's tattoos; the hat he was wearing when he was arrested; the comments he made after being arrested both in his jailhouse conversations and on social media; the clothing he wore to court; and the fact he was in rival gang territory when he committed the crime.

Defendant was wearing green pants and a green and white shirt when he was arrested. Officer Clark admitted that no one had seen the gun that defendant was carrying and there was no evidence that a WSV gang member or Hoover member was aware of his possession of the firearm.

B. *Defense*

Defendant called Officer Carrington. He confirmed that Holt exited the van without being asked. Holt appeared nervous. Holt and defendant were talking back and forth so Officer Carrington separated them. Holt told Officer Carrington that defendant had put the gun under the passenger's seat. Holt did not state that defendant took the gun from his waistband. Officer Carrington believed the van was registered and owned by someone other than Holt.

II

ADMISSION OF DEFENDANT'S PRIOR ROBBERY

AS A PREDICATE CRIME FOR GANG ENHANCEMENT

Defendant contends that the trial court erred by admitting his prior conviction of robbery as a predicate crime to show a pattern of gang activity for the gang enhancement.

A.     *Additional Factual Background*

Prior to trial, the trial court noted that the People sought to use defendant's prior robbery conviction as one of the predicate crimes to prove the fact that Hoover was a criminal street gang, i.e. to show a pattern of gang activity. Defense counsel also noted that it was being used to show defendant's intent for the gang enhancement and that he committed the instant crime for the benefit of the gang.

Defense counsel argued that it was improper propensity evidence. It provided a general characterization that he was a "bad guy" because he had been convicted of a felony. The trial court noted that he was charged with being a felon in possession of a firearm so the jury was already aware he was a convicted felon.

Defense counsel argued that there were several other ways to show his intent, including his tattoos and his gang apparel during the instant crime. Further, there were other predicate crimes committed by other gang members that could be introduced instead. The probative value was minimal because the prosecutor could use other predicates. Defense counsel also noted that the gang participation enhancement under section 186.22, subdivision (a) for the prior robbery had been overturned on appeal. The prior robbery was not gang-related.[5]

The prosecutor responded that he had to prove the primary activities of the gang. This robbery occurred within five years and was relevant to show a pattern of criminal activity. The prosecutor further argued, "I have to show the defendant committed this

---

[5]     The appellate opinion for the prior robbery provides the gang enhancement was reversed.

10

crime, but he did it with specific intent to benefit his criminal street gang. His past activities related to the gang, association with the gang, I think are relevant to show his intent in this case."

The prosecutor stated he was not trying to prove his possession of a gun with the prior, but rather the gang enhancement. Defense counsel stated, "But, again, that's why I think it's less probative and more for propensity. It's a general offense that shows that he's - - he commits crimes, and he's done it again." The trial court assured defense counsel that was not proper argument and any such argument would be immediately stopped.

Defense counsel argued that the jury would imply propensity just from the fact it was admitted. The trial court understood there was a danger of prejudice. The prosecutor recommended a limiting instruction that the prior robbery was only relevant to prove the allegation and not the underlying charge.

The trial court then recognized the recent Supreme Court case of *People v. Tran* (2011) 51 Cal.4th 1040 (*Tran*). The trial court noted that *Tran* involved the admission of the defendant's own crimes to show the predicate crimes. The trial court did note the prior in *Tran* was less serious than the robbery in the instant case and asked for an offer of proof as to what Officer Clark would testify regarding the robbery.

The prosecutor "expected" Officer Clark would testify that defendant was with another known Hoover gang member when he committed the robbery. The prosecutor clarified that the robbery did not involve the use of a gun. The trial court believed this made the prior less prejudicial.

11

The trial court ruled, "The Court has done the weighing and considered the arguments of counsel, done the weighing pursuant to Evidence Code 352. Clearly, the *Tran* case permits under certain circumstances the admission of the defendant's own prior to establish the predicate offenses. It doesn't mean that I don't have to still do the 352 weighing, and I find that the probative value is not substantially outweighed by the danger of undue prejudice, and I will allow the People to introduce that prior as one of the predicates. [¶] I will give a limiting instruction when we go over the instructions. We can see if the standard limiting instruction is sufficient, or if we should add something more specific in there."

The parties stipulated that defendant was convicted of robbery in 2008 for purposes of the felon in possession of a firearm charge. During Officer Clark's testimony, he testified that defendant had committed robbery in 2007 and he was convicted in 2008. Officer Clark was asked, "Can you tell us what stood out to you as being a gang investigator in reviewing the facts of that case?" Officer Clark stated, "Well one, when he was arrested - - well, when he committed the robbery, he was with another gang member; a Hoover gang member. And the fact that they went into this school, I think it was Lincoln Education Center in Garden Grove. They walked into a classroom and they robbed an individual who was inside of the classroom. But what stood out to me was the fact that their [sic] were two of them and one there was person inside the classroom."

Officer Clark mistakenly then stated that the robbery was at gunpoint. The trial court admonished the jury that Officer Clark was mistaken and there was no evidence

12

that either of them had a gun. Officer Clark also indicated that two weeks prior to the incident, defendant had been arrested for another matter and was wearing orange clothing.

The jury instructions were read to the jury but not reported. The jury was given a limiting instruction as follows: "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other. [¶] Specifically, the defendant's conviction can only be used for the purposes of deciding whether or not the elements of the gang allegation have been proven, specifically, primary activities and pattern of criminal gang activity as defined in instruction 1401 and for the element of having a prior conviction for purposes of being a felon in possession of a firearm as defined in instruction 2511. [¶] You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime."

B. *Analysis*

"The California Street Terrorism Enforcement and Prevention Act (the STEP Act; § 186.20 et seq.) criminalizes active participation in a criminal street gang [citation]" (*Tran, supra,* 51 Cal.4th at p. 1044) and committing crimes that benefit or promote the gang (§ 186.22, subdivision (b)). "A criminal street gang is any ongoing association that has as one of its primary activities the commission of certain criminal offenses and engages through its members in a 'pattern of criminal gang activity.' [Citations.] A pattern of criminal gang activity is 'the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of

13

two or more' specified criminal offenses within a certain time frame, 'on separate occasions, or by two or more persons' (the 'predicate offenses'). [Citations.]" (*Tran, supra,* 51 Cal.4th at p. 1044.)

In *Tran,* the California Supreme Court held as follows: "[A] predicate offense may be established by evidence of an offense the defendant committed on a separate occasion. Further, that the prosecution may have the ability to develop evidence of predicate offenses committed by other gang members does not require exclusion of evidence of a defendant's own separate offense to show a pattern of criminal gang activity." (*Tran, supra,* 51 Cal.4th at p. 1044.)

However, such admission is still subject to analysis under Evidence Code section 352. "That evidence of a defendant's separate offense may be admissible to prove a predicate offense does not mean trial courts must in all cases admit such evidence when offered by the prosecution. Considerations such as those described in *People v. Ewoldt* [1994] 7 Cal.4th [380], 404-405, [],will still inform the trial court's discretion and in an individual case may require exclusion of the evidence." (*Tran,* at p. 1049.) "But Evidence Code section 352 requires the exclusion of evidence only when its probative value is *substantially* outweighed by its prejudicial effect. 'Evidence is substantially more prejudicial than probative . . . [only] if, broadly stated, it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome" [citation].' [Citation.]" (*Tran,* at p. 1047.)

In *Tran*, the court reviewed the factors in *Ewoldt* that were relevant to the admission of this type of evidence. It found, "[t]he probative value of the evidence is

enhanced if it emanates from a source independent of evidence of the charged offense because the risk that the witness's account was influenced by knowledge of the charged offense is thereby eliminated. [Citation.] On the other hand, the prejudicial effect of the evidence is increased if the uncharged acts did not result in a criminal conviction. This is because the jury might be inclined to punish the defendant for the uncharged acts regardless of whether it considers the defendant guilty of the charged offense and because the absence of a conviction increases the likelihood of confusing the issues, in that the jury will have to determine whether the uncharged acts occurred. [Citation.] The potential for prejudice is decreased, however, when testimony describing the defendant's uncharged acts is no stronger or more inflammatory than the testimony concerning the charged offense. [Citation.]" (*Tran,* at p. 1047.)

The *Tran* court also found that, "[i]n prosecutions for active participation in a criminal street gang, the probative value of evidence of a defendant's gang-related separate offense generally is greater because it provides direct proof of several *ultimate facts* necessary to a conviction. Thus, that the defendant committed a gang-related offense on a separate occasion provides direct evidence of a predicate offense, that the defendant actively participated in the criminal street gang, and that the defendant knew the gang engaged in a pattern of criminal gang activity." (*Tran,* at p. 1048.)

"The trial court has great discretion in determining the admissibility of evidence, and on appeal, we find reversible error if the trial court's exercise of its discretion was arbitrary, capricious, or patently absurd resulting in a manifest miscarriage of justice." (*People v. Williams* (2009) 170 Cal.App.4th 587, 606.)

Here, the evidence established that defendant had committed a prior robbery. This was one of the criminal activities that Officer Clark indicated was a common crime committed by Hoover gang members. The trial court carefully examined the admission of the prior under Evidence Code section 352. Defendant had been convicted of the prior robbery. Moreover, it was independent of the instant charge. Additionally, although defendant was with another Hoover gang member when he committed the prior robbery, he was not armed. There was no evidence that he used any violence or threats in taking the items. During the instant crime, he had a firearm with a round in the chamber. We reject defendant's claim that the prior robbery was more inflammatory than the current charge. As such, under the directives of *Tran*, the trial court properly admitted defendant's prior robbery to show a pattern of criminal activity by the Hoover gang members.

Defendant also claims that admission of his prior robbery was not necessary because the prosecution had already proven the pattern of criminal activity by admitting "two" other predicate offenses to support the pattern of gang activity element of the gang enhancement.[6] *Tran* - - which defendant did not cite in his opening brief - - makes clear that even if the prosecution has other predicate crimes it can admit to prove the predicate offense, the defendant's crime can still be admitted. (*Tran, supra,* at p. 1049.) The Supreme Court did note "[a]lthough the court need not limit the prosecution's evidence to one or two separate offenses lest the jury find a failure of proof as to at least one of them,

---

[6] In his reply brief, defendant insists there were "three" predicate crimes admitted because there were two crimes attributed to Williams.

the probative value of the evidence inevitably decreases with each additional offense, while its prejudicial effect increases, tilting the balance towards exclusion." (*Ibid.*)

Numerous cases have upheld the admission of more than two predicate offenses. (*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1436 [upholding six predicate offenses]; *People v. Hill* (2011) 191 Cal.App.4th 1104, 1137-1139 [upholding eight predicate offenses].) Here, the People had the discretion to admit not only the predicate crimes committed by Craig and Wiggs, but also by defendant. The probative value was great and was not "inevitably" decreased in probative value by the admission of the other predicate offenses.

Defendant also contends that Officer Clark "inferred to the jury that [defendant] committed the prior robbery for the benefit of the gang." In his reply brief, defendant acknowledges that Officer Clark did not "specifically testify" that the prior robbery was gang related, but that it was inferred to the jury. It is clear the prior predicate crime within the meaning of section 186.22, subdivision (b) need not be gang-related. (*People v. Gardeley* (1996) 14 Cal.4th 605, 621-624.)

We disagree with defendant that Officer Clark opined or inferred that the prior crime was gang-related. Although defendant had originally been convicted of a section 186.22, subdivision (a) enhancement - - requiring active participation - - for the robbery, that was subsequently reversed on appeal. In his testimony, Officer Clark never inferred or implied that the prior crime was gang-related. It was relevant to him as a gang investigator because it was the type of crime that Hoover gang members committed.

17

Finally, even if we were to find that the trial court erred by admitting his prior robbery, we would find it was not prejudicial error. Even if error in admitting evidence of prior crimes occurred, it is not prejudicial where "it is not reasonably probable that a result more favorable to defendant would have resulted absent admission of this evidence." (*People v. Welch* (1999) 20 Cal.4th 701, 749-750; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Defendant contends admission of the evidence was highly prejudicial because it painted defendant as a person who commits crimes for the benefit of a gang. He claims the only purpose for this evidence was to show that since he committed the prior robbery for the benefit of the gang he must have committed the instant crime for the benefit of the gang.

Here, the jury was aware based merely on the charge - - felon in possession of a firearm - - that defendant was a convicted felon. Moreover, the jury was informed by stipulation of the parties that defendant had been convicted of robbery in 2008. The facts of the case were no more inflammatory than evidence of the conviction. Finally, the jury was specifically instructed that it could not consider the evidence to show defendant's propensity to commit the charge or the gang enhancement. It restricted its application to only whether it proved a pattern of criminal activity or the primary activities of the gang. We presume the jury followed the instructions. (*People v. Homick* (2012) 55 Cal.4th 816, 867.)

Finally, there was substantial evidence of defendant's guilt of both possession of a firearm and the gang enhancement (which we will address, *post*). The jury clearly found

Holt to be a credible witness. Holt established that defendant pulled the gun from his waistband and hid it under the front passenger's seat. This was corroborated by Officer Clark finding the gun in a position consistent with it being placed under the seat by the passenger. Based on the evidence and the instructions to the jury, the admission of defendant's prior robbery conviction was not prejudicial.

III

INSUFFICIENT EVIDENCE OF GANG ENHANCEMENT

(§ 186.22, SUBDIVISION (b)(1)(A))

Defendant contends that there was insufficient evidence presented to support the gang enhancement.

A.    *Standard of Review*

"Our task is clear. 'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not

19

warrant a reversal of the judgment."' [Citations.]" [Citation.]' [Citations.] The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

      B.     *Analysis*

To prove a gang enhancement allegation under section 186.22, subdivision (b)(1), the People must prove that the crime for which the defendant was convicted had been '"committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members. . . .' . . . [T]he gang enhancement under section 186.22(b)(1) requires both that the felony be gang related and that the defendant act with a specific intent to promote, further, or assist the gang, . . ." (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1138-1139.)

"It is well settled that a trier of fact may rely on expert testimony about gang culture and habits to reach a finding on a gang allegation. [Citation.]" (*In re Frank S.* (2006) 141 Cal.App.4th 1192, 1196.) Where an expert opines that "particular criminal conduct benefited a gang by enhancing its reputation for viciousness [, this] can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[ ] criminal street gang' within the meaning of section 186.22 [, subdivision ](b)(1)." (*People v. Albillar* (2010) 51 Cal.4th 47, 63; see also *People v. Vang* (2011) 52 Cal.4th 1038, 1048.)

20

"A lone gang member" can be convicted under section 186.22, subdivision (b)(1) if he possesses the requisite intent. (*People v. Rodriguez, supra,* 55 Cal.4th at p. 1138.) "Specific intent to *benefit* the gang is not required. What is required is the 'specific intent to promote, further, or assist in any criminal conduct by gang members. . . .'" (*People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 [Fourth Dist., Div. Two].)

The location and circumstances of the charged offenses; defendant's post-arrest actions; and the gang expert's testimony, constituted substantial evidence the charged offenses were gang-related and that defendant possessed the intent to promote the gang. Officer Clark's testimony supported both prongs of the enhancement. As for the crime being gang-related, Officer Clark advised the jurors that gang members gain respect for the gang by creating fear and intimidation in the community. The Hoover gang had a reputation for possessing firearms. Further, having a loaded firearm gave a gang member the opportunity to commit robbery or intimidate a rival gang member. As to intent to promote, in Officer Clark's opinion, gang members who carry firearms do so with the primary purpose of promoting the gang. In addition, wearing a Hoover symbol and visible tattoos in rival gang territory would promote the gang. Further, a Hoover gang member carrying a firearm in rival gang territory would show a message that he was ready to battle. It would benefit the gang by showing he was fearless and willing to be in WSV territory.

The evidence established the defendant was in rival gang territory with a gun that had a round in the chamber. He had visible Hoover gang tattoos and wore a Houston Astros hat. After this crime, defendant continued to show his allegiance to the Hoover

21

gang.  There was a picture of him on social media throwing a Hoover gang sign.  He tried

to convince his girlfriend or wife to have his gang moniker tattooed on her neck.  He also

bragged that all of the other gangbangers knew who he was because of what he had done

based on the way he acted on the street.  This evidence, along with the expert testimony,

established that defendant's possession of the firearm was gang-related and that he

possessed the specific intent to promote the gang.

Defendant claims that since no one saw him with his hat and tattoos, or the gun,

there was no fear or intimidation shown that would establish a benefit to the Hoover

gang.  He relies on *People v. Rios* (2013) 222 Cal.App.4th 542, a case in which the

appellate court reversed the gang enhancement under section 186.22, subdivision (b)(1)

for insufficient evidence because a firearm found in the glove box was wrapped in a t-

shirt and could not be seen; there was no evidence that the defendant had been in

possession of the gun at the behest of the gang; and no evidence that defendant was in his

own or rival gang territory.  The expert testimony regarding benefit to the gang was pure

speculation.  (*Id.* at pp. 572-575.)

Here, Officer Clark's testimony that such possession of a gun in rival gang

territory benefitted the gang by showing fearlessness and the gang's viciousness

supported the jury's finding in this case and was not speculation.  The jury could

reasonably conclude that defendant possessed the gun to increase the Hoover gang's

reputation for viciousness.  This was supported by the fact that he was arrested in rival

gang territory.  Defendant himself stated that other "gangbangers" knew him because of

the way he acted on the street.  Additionally, at the time of trial, defendant had worn the

22

colors of the Hoover gang which Officer Clark stated would gain him "ultimate respect" by wearing gang colors while being prosecuted for an allegedly gang-related crime. Based on this evidence, the jury could reasonably infer that his possession of the firearm was gang-related and was not based solely on the speculation of Officer Clark.

Defendant claims that since he was not with a fellow gang member when he committed the crimes, the evidence was insufficient to support the second prong that he had the specific intent to promote, assist or further the gang. However, based on a totality of the evidence, including Officer Clark's opinion and defendant's own admission that he sought to be intimidating on the street, the fact he was not in the presence of another gang member is not dispositive of his intent.

Some of the cases on which defendant relies all reached the conclusion that an expert's opinion must be supported by additional evidence demonstrating that the crime was committed to benefit the gang. (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 657; *People v. Ramon* (2009) 175 Cal.App.4th 843, 851; *In re Frank S., supra,* 141 Cal.App.4th at pp. 1198-1199.) The validity of these cases is certainly questionable based on the California Supreme Court's recent decisions finding that expert opinion on whether a crime benefitted the gang is sufficient to support a conviction under section 186.22, subdivision (b)(1). (*People v. Albillar, supra,* 51 Cal.4th at p. 63; *People v. Vang, supra,* 52 Cal.4th at p. 1048.)

Moreover, in the instant case, there was other evidence in addition to Officer Clark's testimony to support that defendant committed the offense to promote the Hoover gang. Defendant prominently displayed a Hoover gang symbol while driving in rival

23

gang territory while in possession of a loaded firearm. Officer Clark made it clear that possession of a firearm for nefarious purposes was a primary activity of the gang and was done so to promote and further the gang. This was supported by defendant's own statements that he was generally feared because of the way he acted on the street. Defendant continued to try to instill fear by wearing the gang's colors during the trial. As such, we reject that the cases cited by defendant support reversal.

The evidence was sufficient to support his conviction of the gang enhancement pursuant to section 186.22, subdivision (b)(1).

IV

DISPOSITION

We affirm the judgment in its entirety.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:

KING
J.

MILLER
J.

24