Filed 9/12/16  P. v. Espino CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D069213 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS278080) |
| GENAVIEVE ESPINO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Dwayne K. Moring, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Anthony DaSilva and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Genavieve Espino guilty of possessing methamphetamine for sale.  (Health & Saf. Code, § 11378.)  The trial court sentenced Espino to serve a six-year split sentence, with two years served in jail and four years of mandatory supervision.  On appeal, Espino asserts the trial court abused its discretion and violated her due process rights by granting the prosecution's motion to admit evidence of her prior conviction for possession of methamphetamine for sale.  We reject Espino's contentions and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2015, Espino was riding in a car which failed to stop at an intersection in Imperial Beach, California.  A San Diego County Sheriff's Deputy stopped the car and asked Espino if, as a condition of probation or parole, she had previously waived her Fourth Amendment rights; Espino responded she had not.  The deputy then called Espino's name into a dispatcher, who reported that in fact Espino was subject to a Fourth Amendment waiver.

The deputy searched Espino's personal belongings and found a small black bag that contained marijuana, a smoking pipe, small plastic baggies, and a baggie containing 3.32 grams of methamphetamine.  The deputy also found another small bag that contained $195 in cash.  The deputy also found two sheets of paper in Espino's purse with names, telephone numbers, and what appeared to be dollar amounts.

Espino was arrested at the scene of the stop and charged with possession of methamphetamine for the purpose of sale in violation of Health and Safety Code section

2

11358. Prior to trial, the People moved in limine to introduce in its case-in-chief Espino's 2011 conviction for possession of methamphetamine for sale; the People argued the prior conviction was relevant and admissible because it showed Espino's intent, knowledge, and absence of mistake. Espino argued that the prosecution should only be able to use the conviction to rebut any assertion she did not know of the illegal nature of methamphetamine; otherwise, she argued it would be used improperly, as propensity evidence. The court granted the People's motion, and the People suggested, and both parties agreed, that the conviction be introduced in the form of a stipulation: Espino "admitted, under penalty of perjury, to having possessed methamphetamine for purposes of sale."

At trial, Sherriff's Detective Robert Forbes testified as a narcotics expert that 3.32 grams of methamphetamine was a quantity greater than would normally be possessed by someone for personal use. Forbes also described pay/owe sheets that drug sellers use to record money owed to them from past drug sales and stated that most drug sales are done on a cash basis. Based on his training and experience, Forbes believed Espino possessed the 3.32 grams of methamphetamine for the purpose of selling it.

The prosecution and defense stipulated that Espino's acquaintance, Bernadette Quigley, had testified under oath prior to Espino's trial that (1) the black bag belonged to Quigley, (2) Quigley placed methamphetamine inside the black bag, and (3) the methamphetamine belonged to Quigley. Espino testified that she agreed to retrieve and take a black bag, which Quigley had told her contained marijuana and a pipe for smoking

3

it, to Quigley in exchange for Quigley sharing the marijuana with her. When questioned by the sheriff's deputy that stopped the car, Espino said that the bag contained marijuana. Espino testified she did not know methamphetamine was in the black bag until the sheriff's deputy told her as she was being arrested.

Another acquaintance of Espino, Gloria Zavala, testified that, in February 2015, Espino helped her raise bail money for a mutual friend who was in custody. According to Zavala, the two pages with names, telephone numbers, and dollar amounts, which the deputy found in Espino's purse, merely listed people who contributed bail money.

## DISCUSSION

On appeal, Espino asserts the trial court erred in admitting her prior conviction for possession of methamphetamine for sale into evidence. She contends the admission was used as propensity evidence, was of marginal value to prove a fact in dispute, was unduly prejudicial and was therefore inadmissible under Evidence Code[1] sections 1101 and 352. Espino also asserts the prejudice was compounded by the trial court's failure to provide a limiting instruction concerning the prior conviction.

A. *Governing Law*

Generally, evidence of a defendant's prior bad act is inadmissible when it is offered to show the defendant had the criminal propensity to commit the charged crime. (§ 1101, subd. (a).) Such evidence may be admitted when relevant to prove some other fact, such as intent, knowledge, or absence of mistake. (§ 1101, subd. (b); hereafter

---

[1] All further statutory references are to the Evidence Code unless otherwise specified.

4

section 1101(b).)  However, even if offered for such a purpose, the admission of the prior act " 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352.' "  (*People v. Balcom* (1994) 7 Cal.4th 414, 426 (*Balcom*).)

Under section 1101(b), evidence of uncharged crimes is admissible to prove intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of intent.  Whereas higher levels of similarity are required to prove identity and common plan, the least degree of similarity between the uncharged act and the charged offense is required to prove intent and knowledge.  Exact similarity between the charged and uncharged acts is not required to prove intent; it is only required that they be similar enough to permit an inference.  (*People v. Rowland* (1992) 4 Cal.4th 238, 261.)

"[T]he truth of the prior uncharged act and defendant's connection to it are preliminary factual issues which must be decided before the prior misconduct can be deemed admissible; if the prior and defendant's connection to it are not established by a preponderance of the evidence, the prior is irrelevant to prove the Evidence Code section 1101(b) fact for which it is being offered."  (*People v. Garelick* (2008) 161 Cal.App.4th 1107, 1115.)

In the context of a defendant's prior conviction for possessing a controlled substance for sale being admitted under section 1101(b), evidence of prior drug use and prior drug convictions is generally admissible to establish that the drugs were possessed for sale rather than for personal use and to prove knowledge of the narcotic nature of the drugs.  (*People v. Williams* (2009) 170 Cal.App.4th 587, 607; see *People v. Pijal* (1973)

5

33 Cal.App.3d 682, 691 [evidence of prior narcotics offenses admissible to show knowledge, motive, and intent where defendant's "knowledge of the narcotic contents of the drug and his intent to sell were at issue"].)

" 'There is a broad consensus that similar acts evidence may be introduced on a doctrine of chances rationale to prove the defendant committed an actus reus when the defendant asserts that he did not cause the . . . harm . . . . This type of evidence is admitted under several of the familiar category labels—absence of mistake or accident, modus operandi, or plan or scheme—but probability based reasoning underlies its relevance.' " (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1379.) "The inference to be drawn is not that the actor is *disposed* to commit such acts; instead, the inference to be drawn is that, in light of the first event, the actor, at the time of the second event, must have had the intent attributed to him by the prosecution." (*People v. Robbins* (1988) 45 Cal.3d 867, 879.)

Importantly, the court must also examine whether the probative value of the prior bad act evidence is " 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' (Evid. Code, § 352.)" (*Balcom*, *supra*, 7 Cal.4th at p. 427.) Because this type of evidence can be so damaging, " ' "[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded." ' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 667.) We review the trial court's

6

ruling on the admission of evidence under sections 1101 and 352 for abuse of discretion. (*Id.* at pp. 667-668.)

    B.  *Analysis*

    1.  Section 1101(b) Admissibility

Espino argues that, because only her bare admission to having been previously convicted of possession of methamphetamine for sale was admitted into evidence and not any facts surrounding the conviction, the jury could not have compared the similarity of her current possession of methamphetamine to the circumstances of her prior possession and could only use the admission improperly as propensity evidence. Espino argues that her one previous instance of possessing methamphetamine for sale was simply not enough to show that, on this occasion, she possessed methamphetamine for the same purpose. Like the trial court, we disagree.

The People only needed to show the prior conviction was "sufficiently similar" to the charged offense to support an inference of Espino's intent. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) While more instances of prior misconduct decrease the likelihood of mistake or accident, all that is required for a prior conviction to be admissible is that both instances are sufficiently similar to negative accident, inadvertence, good faith or other innocent mental state. (*Id.* at p. 402, see *People v. Hendrix* (2013) 214 Cal.App.4th 216, 242-243 [to establish knowledge when that element is akin to absence of mistake, the uncharged events must be sufficiently similar to the circumstances of the charged offense].) Here, the jury was presented with a stipulation which stated that Espino had

7

admitted under oath that she had previously possessed methamphetamine for sale. Espino's conviction of possessing methamphetamine for sale in 2011 was more than sufficient to give rise to an inference that, in this case, her possession of more than three grams of the drug was neither a mistake nor an accident.

2. Section 352

As we have discussed, when uncharged crime evidence otherwise meets the criteria for admission under section 1101(b), the court is also required to consider the impact of section 352, which "requires the exclusion of evidence only when its probative value is *substantially* outweighed by its prejudicial effect. 'Evidence is substantially more prejudicial than probative [citation] [only] if, broadly stated, it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome" [citation].' " (*People v. Tran* (2011) 51 Cal.4th 1040, 1047, quoting *People v. Waidla* (2000) 22 Cal.4th 690, 724.)

Here, the trial court found the probative value of Espino's prior possession was not substantially outweighed by its prejudicial effect. Again, we agree with the trial court.

The prior conviction was highly probative of the material elements of the crime charged, and the prejudicial effect was minimal. The prior conduct was not remote, occurring only four years prior to the current charge, and not overly inflammatory, because the prior was no more egregious than the current charge. (See *Balcom*, *supra*, 7 Cal.4th at p. 427 ["close proximity in time of the uncharged offenses to the charged offenses increases the probative value of [the] evidence"]; see also *People v. Douglas*

8

(1990) 50 Cal.3d 468, 511 [remoteness of other crimes evidence generally goes to its weight and not to its reliability]; *People v. Ewoldt*, *supra*, 7 Cal.4th at p. 405 [potential for prejudice was decreased where evidence "describing defendant's uncharged acts . . . was no stronger and no more inflammatory than the testimony concerning the charged offenses"].)

Additionally, the form of the evidence as an admission rather than as a prior "conviction" also decreased the probability of unduly inflaming the passions of the jury. (See, e.g., *People v. Massey* (1987) 192 Cal.App.3d 819, 822, 825 [proper to admit prior convictions, sanitized as undesignated felonies, to impeach defendant]; *People v. Foreman* (1985) 174 Cal.App.3d 175, 182 [no error to sanitize prior burglary as "felony involving theft"].)

We also reject Espino's contention the trial court's failure to give a version of CALCRIM No. 375[2] insured that the uncharged crime would be used as propensity

---

[2]    The model CALCRIM No. 375 instruction states in pertinent part:  "[The People presented evidence that the defendant committed ((another/other) offense[s]/the offense[s] of *<insert description of alleged offense[s]>*) that (was/were) not charged in this case.]  [¶] . . . [¶]
    "You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the (uncharged offense[s]/act[s]).  Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.
    "If the People have not met this burden, you must disregard this evidence entirely.
    "If you decide that the defendant committed the (uncharged offense[s]/act[s]), you may, but are not required to, consider that evidence for the limited purpose of deciding whether:  [¶] . . . [¶]
    "*<B. Intent>*
    "[The defendant acted with the intent to *<insert specific intent required to prove the offense[s] alleged>* in this case](./; or)

9

evidence. Espino did not request the instruction, and, "in general, the trial court is under no duty to instruct sua sponte on the limited admissibility of evidence of past criminal conduct." (*People v. Collie* (1981) 30 Cal.3d 43, 64, italics and fn. omitted.) We also note that, even though the limiting instruction was not given, the prosecutor twice cautioned the jury that it was not to rely on Espino's prior admission as the only fact to find her guilty of possessing methamphetamine for purposes of sale.

3. Harmless Error

Error is harmless unless it is reasonably probable a more favorable result would have been obtained. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Here, other substantial evidence was presented which established that Espino knew methamphetamine was in the black bag and that the drug was going to be sold.

In particular, the two sheets of paper with written names, telephone numbers and dollar amounts found in Espino's possession were plainly pay/owe sheets and, as such, were fairly persuasive evidence Espino was engaged in the sale of methamphetamine. Their persuasive power came not only from the expert testimony about pay/owe sheets, but from the coincidence that the sheets were found in Espino's possession along with more than three grams of methamphetamine.

---

"*<D. Knowledge>*
"[The defendant knew *<insert knowledge required to prove the offense[s] alleged>* when (he/she) allegedly acted in this case](./; or)
"*<E. Accident>*
"[The defendant's alleged actions were not the result of mistake or accident]."

10

This, of course, brings us to Espino's claim the sheets were a record of bail contributions. Because the bail contributions claim was so at odds with the inference to be drawn from the coincidental discovery in her possession of both a relatively large amount of methamphetamine *and* the sheets, the jury was not likely to have given the claim much credit. Espino's overall lack credibility was established at the outset of the trial when her dishonest denial with respect to her waiver of her Fourth Amendment rights was relayed to the jury by the deputy who stopped her.

In sum, it is not reasonably probable that Espino would have obtained a more favorable result if the prior conviction had been excluded. Thus, any error by the trial court in admitting Espino's prior conviction was harmless. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

4. Due Process

Because Espino's prior conviction was properly admitted under section 1101(b) to determine the legitimate issues of intent, knowledge, and absence of mistake, "defendant's due process right to a fair trial was not transgressed by the admission of such evidence." (*People v. Rogers* (2013) 57 Cal.4th 296, 332.)

DISPOSITION

The judgment is affirmed.

                                                                    BENKE, J.

WE CONCUR:


McCONNELL, P. J.


PRAGER, J.*

---

*       Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12