Filed 2/10/23  P. v. Wilson CA3
Opinion following transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C093944 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE001859) |
| v. | |
| STEVEN WILSON, | ON TRANSFER |
| Defendant and Appellant. | |

Defendant Steven Wilson stabbed and killed Lora Hoagland on the American River bike trail.  A jury convicted him of first degree premeditated and deliberate murder and the trial court sentenced him to 75 years to life plus 11 years.

In his original appeal, defendant asserted the following contentions:  (1) the trial court abused its discretion in admitting evidence of defendant's uncharged 2002 homicide, (2) the trial court abused its discretion in admitting a video of a rap song defendant performed, (3) the cumulative prejudice from the improper admission of evidence requires reversal, (4) there is insufficient evidence to sustain a finding of premeditation and deliberation, and (5) defendant is entitled to one additional day of

1

custody credit. In addition, the People asserted (6) the abstract of judgment must be corrected because it does not accurately reflect the judgment imposed by the trial court.

After this court modified and affirmed the judgment and remanded for amendment and correction of the abstract of judgment, the California Supreme Court granted review and transferred the matter back to this court with directions to vacate our decision and reconsider the cause in light of Assembly Bill No. 2799 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 973).

We conclude the trial court did not abuse its discretion in admitting evidence of defendant's uncharged act, any error in admitting the rap song was harmless, there is no accumulated prejudice requiring reversal, the evidence was sufficient to prove premeditation and deliberation, defendant is entitled to one additional day of presentence custody credit, and the abstract of judgment must be corrected to properly reflect the judgment.

We will modify the judgment to add one more day of presentence custody credit, affirm the judgment as modified, and remand for amendment and correction of the abstract of judgment.

## BACKGROUND

As defendant does not raise any issue implicating his identity as the killer, we will focus on evidence of defendant's actions and mental state.

Jessica Peckham was the People's chief witness in this case. She knew defendant well and witnessed the killing.

On the night of January 26, 2020, defendant and Peckham went for a walk on the American River bike trail. Hoagland walked toward them in the dark. She was naked and wet. Defendant acted concerned and asked her if she was okay. But Hoagland was not making sense. Defendant put his trench coat on her, but he led her in a direction away from where there was a fire station or where she could get some help. Defendant

2

carried Hoagland for a stretch and put her down under a railroad trestle. Peckham asked Hoagland if she could help her, but Hoagland said she only wanted defendant's help.

Defendant knelt or sat behind Hoagland, and she leaned back against him. Defendant reached behind his back, drew a long knife, and stabbed Hoagland in the chest and then in the neck.

Peckham walked away, and defendant eventually caught up to her. Defendant told Peckham he stabbed Hoagland in the neck after Peckham left. They walked to Peckham's house, where defendant washed blood off the knife and left Peckham's house the next morning.

Two days after the killing, defendant returned to Peckham's house. Peckham surreptitiously recorded defendant. They discussed the killing of Hoagland and news reports. Defendant told Peckham that he had killed once before when he was 19 years old. He and two other people were riding around in Reno, Nevada, and picked up a girl. Defendant killed her the same way he killed Hoagland. On that occasion, however, he disassembled the knife and scattered it along the highway on the way back to Sacramento. He also burned his clothing, except for his shoes. Peckham asked defendant if he planned to do it again, and he replied that he did, but not in the near future, and he planned to do it in different locations. He said, "We're long past me lying to you about the bodies that I racked up." Concerning the killing of Hoagland, defendant admitted it was "straight up homicide" and that his victim "type" was female. Defendant also admitted to Peckham that he is a serial killer. He watches people, pictures them dead, and fantasizes about killing. He wished he had cut Hoagland open and dissected her. And he admired the work of Jack the Ripper.

Peckham reported the killing the same day she recorded the conversation with defendant. Hoagland's body was found nude and covered with blood. She died from multiple stab wounds.

A jury convicted defendant of the first degree murder of Hoagland (Pen. Code, § 187, subd. (a))[1] and found true an allegation that defendant used a deadly weapon (§ 12022, subd. (b)(1)). In addition, the trial court found true allegations that defendant had two prior serious felony convictions—a 2005 robbery and a 2011 robbery. The trial court sentenced defendant to an indeterminate term of 75 years to life (§ 187, subd. (a)), with consecutive determinate terms of one year for the use of a deadly weapon (§ 12022, subd. (b)(1)) and 10 years for the two prior serious felony convictions (§ 667, subd. (a)(1)).

## DISCUSSION

### I

Defendant contends the trial court abused its discretion by admitting evidence of defendant's uncharged homicide committed in Reno, Nevada, when he was 19 years old. He claims the evidence was inadmissible under Evidence Code sections 1101 and 352 and that admission of the evidence violated his due process rights.

Before trial, the People moved to admit evidence of defendant's murder of a woman in Reno, referencing 2002 or 2004 in relation to the crime. The People made an offer of proof that defendant told Peckham about a murder he committed in Reno when he was 19 years old, about 15 years before the murder in this case. He and two accomplices picked up a female prostitute and stabbed her the same way he killed Hoagland. After killing the prostitute, defendant disassembled the knife and scattered it along the freeway on the drive back to Sacramento. The People informed the trial court that a body had not been discovered in connection with defendant's statements about the murder in Reno. The trial court admitted the uncharged act evidence but instructed the jury it could consider that evidence for the limited purpose of determining whether

---

[1] Undesignated statutory references are to the Penal Code.

4

defendant had an intent to kill and only if the People proved the uncharged act occurred by a preponderance of the evidence.

While evidence of a defendant's character is generally inadmissible to prove a defendant's criminal propensity, evidence a defendant committed an uncharged act may be admitted if it is relevant to prove a material fact, such as the defendant's intent. (Evid. Code, § 1101, subds. (a) & (b); *People v. Fayed* (2020) 9 Cal.5th 147, 191 (*Fayed*).) Considerations include whether (1) the fact to be proved is material, (2) the uncharged act tends to prove the fact, and (3) the evidence should nevertheless be excluded based on rule or policy. (*Fayed,* at p. 191.) We review the trial court's admission of uncharged act evidence for abuse of discretion. (*Id*. at pp. 189-190.)

The fact to be proved by the uncharged act evidence in this case was defendant's intent to kill, including premeditation and deliberation. Defendant's not-guilty plea placed this element in dispute, and the People were obligated to present evidence proving it. (*People v. Steele* (2002) 27 Cal.4th 1230, 1243 (*Steele*).) Thus, evidence of defendant's intent to kill, including premeditation and deliberation, was material.

Furthermore, the uncharged act evidence tended to prove intent to kill, premeditation, and deliberation. "[T]he more often one kills, especially under similar circumstances, the more reasonable the inference the killing was intended and premeditated. [Citations.]" (*Steele, supra*, 27 Cal.4th at p. 1244.)

"The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish . . . the presence of the normal, i.e., criminal, intent accompanying such an act . . . .' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent

5

in each instance." [Citations.]' [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

Concerning the similarity between the uncharged act and the murder of Hoagland, defendant focuses on the differences. He notes that in Reno he acted in concert and subsequently destroyed the evidence. He further argues the uncharged act occurred about 15 years before the instant crime and was therefore remote in time. But the similarities were sufficient for the trial court to exercise its discretion and admit the uncharged act evidence. In each instance, defendant met a vulnerable female and soon thereafter killed her with a knife.

Defendant asserts there was nothing to corroborate his statement that he committed the uncharged act. But that circumstance did not preclude admissibility. Rather, it went to the People's burden to prove that the uncharged act occurred. Certainly, defendant's statement was enough to support a jury finding that he committed the uncharged act. As the trial court instructed the jury, "[t]he testimony of only one witness can prove any fact." (CALCRIM No. 301.)

Because the uncharged act evidence tended to prove defendant's intent, premeditation, and deliberation in this case, it was admissible unless a rule or policy required exclusion of the evidence. (*Fayed, supra*, 9 Cal.5th at p. 191.) Defendant claims the uncharged act evidence should have been excluded under Evidence Code section 352 because the prejudicial effect of the evidence substantially outweighed its probative value.[2] We disagree.

---

[2] Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

As noted, the uncharged act evidence was probative on the issues of intent, premeditation, and deliberation. Defendant had the opportunity to argue the differences between the uncharged act evidence and the circumstances of this case, but the jury could reasonably conclude that, because defendant had been faced with a similar circumstance in the past and killed a vulnerable female, his attack of Hoagland was premeditated and deliberate and that he intended to kill her.

While there was some danger the uncharged act evidence would inflame the jury's emotions, as there generally is in such a violent and serious case, the uncharged act evidence was not so graphic or violent that the jury could not follow the trial court's instructions on using the evidence only to determine defendant's mental state when he killed Hoagland. The prejudicial effect did not substantially outweigh the probative value, and the trial court did not abuse its discretion in admitting the evidence. (*People v. Scott* (2011) 52 Cal.4th 452, 491.)

Defendant further claims the admission of the uncharged act evidence violated his due process rights. However, proper admission of evidence under state rules of evidence generally does not violate a defendant's due process rights (*People v. Lucas* (1995) 12 Cal.4th 415, 464), and we find no violation here.

II

Defendant next contends the trial court abused its discretion and violated his due process rights by admitting the video of a rap song defendant performed. Additionally, defendant contends reversal is required because the Legislature recently passed Assembly Bill No. 2799, changing the procedure and requirements for admitting evidence of creative expression under Evidence Code section 352 and newly enacted Evidence Code section 352.2. (Stats. 2022, ch. 973.)

Evidence Code section 352.2 became effective January 1, 2023. It provides additional procedures and factors to consider before admitting evidence of creative expression under Evidence Code section 352. The purpose of Evidence Code

section 352.2 is to guard against introducing stereotypes or activating bias and to exclude character or propensity evidence against the defendant. (Stats. 2022, ch. 972, § 1, subd. (b).) In addition to his contention in his original briefing that admission of the rap song was an abuse of discretion under Evidence Code section 352, defendant claims on transfer of this case from the California Supreme Court that Evidence Code section 352.2 must be applied to the introduction of the rap song in this case, and that such application requires reversal.

In 2018, two years before defendant killed Hoagland, Peckham recorded a video of defendant performing a rap song called "Psychopath" and posted it on YouTube. The video and a transcript were shown to the jury. The lyrics of the rap song exclaimed, "I'm a psychopath" willing to kill, and included the following: "Call me Death stroke. Keep fucking with this guy and get your chest broke. Wide open at close range with a 12 gauge." "I'm the demon spirit trying to take your fucking breath. I'm the man gutting maggots with a switchblade. Then carve your back out with a rusty spade. It's poetic how you pussy motherfuckers scream and (unintelligible) crying (unintelligible) from this bitch's crime scene." "I'm the reaper sin. That means I'm like Gordon, Dahmer and Gacy." "And personally I think you all need your throats slit. After all you always just a waste of life. You know, I'd love to have come (unintelligible) meet my knife." "That means if I'm gonna kill someone I'm gonna do it while sober. It also means if you cross this dude your life is over. And then I might just have myself a blood bath. I mean that literally because I am a psychopath."

Before trial, the People moved to admit the "Psychopath" video. The People offered the rap song to show defendant's intent and motive. The trial court determined that the rap lyrics were relevant to whether defendant premeditated and deliberated because it showed he had thought about killing. And the rap song included lyrics concerning a knife and injury to the chest, which suggested stabbing. Based on this reasoning, the trial court admitted the rap lyrics on the limited issue of defendant's intent.

8

Defendant does not claim on appeal that he was not the actual killer. Moreover, Peckham, defendant's friend and a witness to the killing, testified at trial. There is evidence that as she and defendant walked on the American River bike trail, Hoagland approached them, naked and wet. Defendant at first acted as if he were concerned for Hoagland. As Hoagland was leaning against defendant, he drew a knife and plunged it into her chest and neck. Defendant and Peckham then walked to Peckham's house, where defendant washed the blood off his knife.

Two days after the killing, Peckham recorded defendant's statements about the killing. He talked about the news reports of Hoagland's killing, and he told Peckham he had killed a girl before in Reno. Defendant also told Peckham he intended to kill again. He said, "We're long past me lying to you about the bodies that I racked up." And he called the killing of Hoagland "straight up homicide." He said he was a serial killer and fantasized about killing. He wished he had cut Hoagland open and dissected her.

Erroneous admission of evidence is prejudicial only if it is reasonably probable the defendant would have obtained a more favorable result if the evidence had not been admitted. (*People v. Watson* (1956) 46 Cal.2d 818, 837.) Much of what was in the rap song was repeated to Peckham in defendant's conversation with her after the killing. For example, he expressed thoughts about being a serial killer and killing again and that he fantasized about killing and wished he had dissected Hoagland. All of those statements were properly admitted. Considering the overwhelming evidence, it is not reasonably probable defendant would have obtained a better result if the rap song had been excluded.

Defendant asserts admission of the rap song injected racial bias into the proceedings, which Evidence Code section 352.2 is meant to prevent. However, the trial court instructed the jurors not to allow any prejudice or bias to influence their decision. We presume the jury understood and followed that instruction. (*People v. Chavez* (2000) 84 Cal.App.4th 25, 30-31.) And the evidence of defendant's guilt did not present a close

case.  Because admission of the rap song was harmless in light of the remaining evidence, application of Evidence Code section 352.2 would not change the result.

Defendant further contends admission of the rap song violated his constitutional due process rights.  However, erroneous admission of evidence is a due process violation only if it makes the trial fundamentally unfair.  (*People v. Partida* (2005) 37 Cal.4th 428, 439.)  The trial here was not fundamentally unfair.  Overwhelming admissible evidence supported the jury's verdict, and admission of the rap song was cumulative to defendant's actions and statements evincing his intent.  Accordingly, there was no due process violation.

## III

Defendant contends the cumulative prejudice from the erroneous admission of the uncharged homicide and the rap song requires reversal.  Because there was no abuse of discretion or error in admitting the uncharged homicide, and any error in admitting the rap song was harmless, there was no accumulated prejudice requiring reversal.

## IV

Moreover, defendant contends there was insufficient evidence to sustain a finding of premeditation and deliberation.

"A crime is premeditated when it is considered beforehand and deliberate when the decision to commit the crime is formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. [Citations.]  [¶]  The process of deliberation and premeditation does not require any extended period of time:  ' "The true test is not the duration of time as much as it is the extent of the reflection.  Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . ." '  [Citations.]  The requirement of premeditation and deliberation excludes acts that are the 'result of mere unconsidered or rash impulse hastily executed.' "  (*People v. Gonzalez* (2012) 210 Cal.App.4th 875, 886-887.)

10

When assessing the sufficiency of evidence of premeditation and deliberation, courts often consider three "*Anderson* factors": planning, motive, and manner of killing. (*People v. Shamblin* (2015) 236 Cal.App.4th 1, 10, citing *People v. Anderson* (1968) 70 Cal.2d 15, 26-27.) However, the *Anderson* factors are merely guidelines. (*People v. Gonzalez* (2012) 54 Cal.4th 643, 663.) " 'A senseless, random, but premeditated, killing supports a verdict of first degree murder.' " (*People v. Thomas* (1992) 2 Cal.4th 489, 519.) "In reviewing a sufficiency of evidence challenge, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (*Gonzalez,* at p. 653.)

Contrary to defendant's arguments, there was evidence of all three *Anderson* factors in this case, thus supporting the jury's implicit finding of premeditation and deliberation.

As to planning, the evidence established defendant fantasized about killing and wanted to kill more, specifically females. He carried a large knife to the American River bike trail at night and found a vulnerable victim. Instead of escorting Hoagland to safety, such as to the fire station, he further isolated her under a railroad trestle.

As to motive, defendant desired to be a serial killer. Killing Hoagland satisfied that desire, or at least helped to achieve his goal.

As to manner of killing, defendant plunged a large knife into Hoagland's chest and neck. There can be no reasonable doubt he decided to kill her and deliberately chose a manner likely to achieve that outcome.

Having found all three *Anderson* factors, we conclude the evidence, considered in the light most favorable to the judgment, reflected a killing that was considered beforehand with careful weighing and consideration of the course of action. Defendant wanted to kill, prepared to kill, found a potential victim, isolated her, and took action to

11

end her life. Defendant's contention that the evidence of premeditation and deliberation was insufficient to sustain the verdict is without merit.

V

Defendant contends, and the People agree, he is entitled to one additional day of custody credit.

A defendant is entitled to presentence custody credit for all days, including partial days, in custody. (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48.) The trial court awarded defendant 437 days of presentence custody credit. Defendant was arrested on January 28, 2020, and his sentencing was on April 9, 2021. Including both the day of arrest and the day of sentencing, that is a span of 438 days. Defendant is therefore entitled to modification of the judgment to include one more day of presentence custody credit.

VI

The People argue the abstract of judgment must be corrected because it does not accurately reflect the judgment imposed by the trial court.

As noted, the trial court imposed both indeterminate and determinate terms at sentencing. But the record on appeal contains an abstract of judgment reflecting only the indeterminate term of 75 years to life. The matter must be remanded for preparation of a proper abstract of judgment that reflects the determinate term. (See *People v. Zackery* (2007) 147 Cal.App.4th 380, 388 [abstract of judgment must accurately reflect judgment orally pronounced].)

DISPOSITION

The judgment is modified to award one additional day of presentence custody credit for a total of 438 days. The judgment is affirmed as modified. The matter is remanded with directions that the trial court amend the abstract of judgment to reflect the judgment as modified, and to correct the abstract of judgment to accurately reflect

12

the sentence orally imposed.  The trial court is directed to send the amended and corrected abstract of judgment to the Department of Corrections and Rehabilitation.


                                          /S/

                                       MAURO, Acting P. J.


We concur:


     /S/

RENNER, J.


     /S/

EARL, J.

13