Filed 2/24/23  P. v. Oseguera CA1/4
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>DANIEL OSEGUERA,<br><br>　　　　Defendant and Appellant. | A163842<br><br>(San Mateo County<br>Super. Ct. No. 17-NF-007297-A) |

Defendant Daniel Oseguera appeals a judgment convicting him of, among other things, numerous offenses arising out of two home invasion robberies with several findings by the jury that his offenses were committed for the benefit of a criminal street gang. Defendant contends there is no substantial evidence to support the gang-enhancement findings under Penal Code[1] section 186.22 as amended by Assembly Bill No. 333 (2021–2022 Reg. Sess.) (AB 333) while his appeal was pending. He also contends the trial court erred in denying his request to bifurcate the gang-enhancement allegations either because section 1109, also enacted pursuant to AB 333, which requires bifurcation, applies retroactively or because the failure to bifurcate violated his right to due process.

---

[1] All statutory references are to the Penal Code unless otherwise noted.

1

We agree that AB 333 applies retroactively insofar as it amends the substantive elements of the gang enhancement and that the true findings on the enhancements must be vacated and remanded for retrial because the jury did not make the factual findings required under the amended statute. We conclude, however, that any error with regard to the failure to bifurcate the gang enhancements in this case did not prejudice the jury's deliberation of the substantive charges. Accordingly, we vacate the gang enhancements and remand for further proceedings. On remand, the court can correct the sentencing errors identified by the parties on appeal. The judgment is affirmed in all other respects.

## Background

Defendant was charged by amended information with four counts of home invasion robbery (§ 212.5, subd. (a)); three counts of kidnapping (§ 209, subd. (b)(1)); two counts of first degree burglary (§ 460, subd. (a)); being a felon in possession of a firearm (§ 29800, subd. (a)(1)); possessing an assault weapon (§ 30605, subd. (a)); unlawfully possessing ammunition (§ 30305, subd. (a)(1)); and possessing cocaine for sale (Health & Saf. Code, § 11351). As to the robbery counts, the information alleged that defendant acted in concert with two or more persons. (§ 213, subd. (a)).) As to the robbery, kidnapping, and burglary counts, the information alleged that defendant personally used a firearm and/or a principal used a firearm. (§ 12022.53, subds. (b) & (e)(1).) As to the burglary counts, the information further alleged that a person other than an accomplice was present. (§ 667.5, subd. (c)(21).) As to the possession of cocaine for sale count, the information alleged that defendant was personally armed with a firearm. (§ 12022, subd. (c).) As to the robbery, kidnapping, burglary, firearm possession, ammunition possession, and assault weapon counts, the information alleged that defendant

2

committed the offenses for the benefit of a criminal street gang. (§ 186.22, subd. (b).) The information also alleged that defendant committed all of the charged offenses while on parole (§ 1203.085, subds. (a), (b)) and that defendant had suffered a prior serious felony conviction (§ 667, subd. (a)(1)) and a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12).

At trial, the trial court granted defendant's motion for judgment of acquittal as to the three kidnapping counts and, on motion of the prosecutor, struck the firearm allegations attendant to the burglary counts.

Evidence was presented that in March 2017, a home-invasion robbery occurred at a residence in the City of San Jose. Two victims testified that four men entered their home by force and threatened them with a gun while searching the house for valuables. The gun was silver on the top and black on the bottom. The robbers wore masks that covered part of their faces. The victims identified the items stolen as including jewelry, designer handbags and wallets, cash and credit cards.

Evidence was also presented regarding a second home-invasion robbery that occurred at a residence in Burlingame in April 2017. Two victims testified that three people entered their home by force and threatened them with a gun while searching their home for valuables. The robbers took the victims to the main bedroom and ordered them to open their safe. One of the victims opined that it appeared as though one of the robbers knew the location of the safe. The victims had moved into the residence about a month earlier and had added storage cabinets in the residence's garage and two bedrooms, including a safe in the closet of the main bedroom. The work was completed on March 30 and 31 by Premier Garage. The victims testified that all three of the robbers wore gloves and masks on their faces. The victims

3

identified the items stolen as including the safe, a briefcase, cash and credit cards, and a Versace vase.

The owner and manager of Premier Garage testified that he was responsible for the work performed at the residence in Burlingame. Four employees were assigned to the project, including defendant. Defendant's task was to install cabinets in the garage but his coworker testified that defendant went to "go check out the closet" after he finished the cabinets in the garage.

Police detectives contacted defendant shortly after the April robbery. At that time, officers saw in plain sight in defendant's car two clear plastic bindles containing a white, powdery substance, that was later determined to be cocaine. The officers also found face masks and gloves in his car. At trial, the victims testified that the masks and gloves were similar to those worn by the robbers during the crimes. After searching defendant's car, the officers searched his residence in East Palo Alto. The officers found a black and silver gun in the bedroom that belonged to defendant's brother. Three of the four victims believed the gun was similar to the gun used in their robbery, but one did not.

In defendant's living room, officers found credit cards, health insurance cards, a driver's license, and a Clipper card stolen during the April robbery. In the trunk of a car parked in defendant's backyard, officers found a brown bag containing a briefcase that belonged to one of the victims of the April robbery. Officers also recovered from the vehicle two firearms, including an automatic weapon, ammunition, and 8.232 grams of cocaine. A backpack recovered from the car included several cardiopulmonary resuscitation (CPR) certificates and "labor training cards" with defendant's name on them.

4

Sometime later, officers found the March victim's wallet and cell phone in the possession of a minor when he was booked into juvenile hall. The prosecution introduced evidence showing that defendant and the minor communicated by phone several times on the night of the April robbery.

The minor's DNA was found on the inside of a black ski mask recovered from defendant's car. Defendant's DNA was found on gloves recovered from his car.

A search of defendant's cell phone revealed that three days after the San Jose robbery, defendant searched the internet for information about the crime and that the day after the Burlingame robbery, he searched the internet for "Burlingame News." In text messages sent five days after the March robbery, defendant seems to be negotiating the sale of designer handbags (the same type of property identified as stolen by the San Jose victims) to his mother. A text message from defendant to his girlfriend the day after the March robbery indicated that he had a gift for her, followed by photographs of a pair of earrings. Experts compared the palm in the photograph holding the earrings to a palm print obtained from defendant and concluded the two were a match. A victim of the March robbery identified the earrings in the photographs as similar to earrings stolen from her home.

A search of the minor's phone revealed that shortly after the Burlingame robbery he searched for information about a "home invasion Burlingame today" and a "Versace white vase." GPS metadata from a black "pocket photo" found on the minor's phone showed that the phone was "approximately 800 feet from" the Burlingame residence approximately 45 minutes before the Burlingame robbery took place.

An expert "in the analysis and interpretation of call detail records and the examination of cellular phones" testified that on the morning of the San

Jose robbery, defendant's cell phone connected to a cell tower about a half-mile from the location of the robbery. The expert opined that individuals often "case" an area they intend to rob before committing the crime. On the night of the April robbery, both defendant and the minor's cell phones connected to a cell tower 0.41 miles from the Burlingame residence.

The prosecution presented the following evidence in support of the allegations that defendant was a member of the Midtown Menlo Norteño gang (MMN) and that these offenses were committed for the benefit of that gang. A police officer assigned to the Brisbane Police Department's gang task force testified that he had contact with defendant in August 2016 after defendant was involved in a traffic stop. At that time, defendant admitted he was an active member of MMN. Evidence was also admitted that defendant was convicted of assault with a firearm and causing great bodily injury for the benefit of a gang following an incident in January 2013.[2]

A deputy with the San Mateo County Sheriff's Office opined that the minor who was believed to have been involved in these offenses was also a MMN gang member. The officer testified that the minor had posted photographs on social media of himself, defendant and other known or suspected MMN members in which he and others were flashing the gang's hand sign. The parties stipulated that the minor had "suffered a sustained juvenile petition for a felony criminal offense enumerated in Penal Code section 186.22(e)."

An expert witness testified to the turf, rules and culture of the gang and explained how criminal activity supports gang activity and recruiting. He opined that the primary criminal activities of the MMN are murder,

---

[2] Defendant's prior convictions were established with a certified record of conviction and no details of the offenses were admitted.

attempted murder, residential burglaries, robberies, burglaries from vehicles, possession of stolen vehicles, possession of narcotics for sales, illegal possession of firearms, and felony assaults.

A police witness testified that he assisted in the traffic stop of a car in which German Alvarado, later identified as a suspected member of MMN, was found to be in possession of a loaded firearm. He was later convicted of carrying a concealed firearm. Another police witness testified that he also stopped Alvarado and found narcotics in his car. Alvarado was convicted of possession of methamphetamine for sale based on the narcotics recovered from his car. A third police witness testified to a jail fight between the Norteños and a rival gang in which Carlos Yepez, a known member of MMN, participated in the fight. Yepez was ultimately convicted of assault by means of force likely to cause great bodily injury.

Presented with the facts of the April robbery at the home in Burlingame, the prosecution's gang expert opined that two of the robbers, defendant and the minor, were MMN gang members and that the crime was committed for the benefit of the gang. He explained the reputational benefits of committing such crimes for both the gang itself and the gang members. Presented with the facts regarding the March robbery at the house in San Jose, the expert opined that the crime also was committed by MMN members for the benefit of the gang for the same reasons. On cross-examination, the expert acknowledged that absent the participation of known gang members, the facts of the robberies did not otherwise suggest the crimes were gang related.

The jury convicted defendant of the four home invasion robbery counts, two burglary counts, being a felon in possession of a firearm, unlawfully possessing ammunition, and possessing cocaine for sale. As to the offenses

arising out of the home invasion robbery in Burlingame (two counts of robbery, one count of burglary, the firearm possession count and the ammunition possession count), the jury found true the gang allegations. As to all the robbery counts, the jury found true the allegations that defendant acted in concert with two or more persons, and that a principal used a firearm. As to both burglary counts, the jury found true the allegations that a person other than an accomplice was present. The jury was unable to reach a verdict as to the assault weapon count and did not make findings on the remaining enhancement allegations.

Following a bifurcated court trial, the court found true, on all but one count, the allegations that defendant committed the offenses while on parole. The court also found true the allegations that defendant suffered a prior serious felony conviction and a prior strike conviction. The court granted the prosecutor's motions to strike the enhancement allegations for which the jury did not make findings.

Defendant was sentenced to an aggregate term of 50 years, 4 months to life in prison.

## Discussion

### 1. *The true findings on the gang enhancements must be vacated.*

The jury found true the gang-enhancement allegations under section 186.22, subdivision (b) attendant to counts 1, 2, 5, 6 and 8, and the section 12022.53, subdivision (e)(1) gang-related firearm enhancements attendant to counts 1, 2, 11 and 12.[3] While this appeal was pending, the Legislature

---

[3] Under subdivision (e)(1) of section 12022.53, the enhancements prescribed in subdivisions (b) through (d) of that section are applicable to any person who is a principal in the commission of the offense if both of the following requirements are pled and proved: (1) the person violated section 186.22, subdivision (b); and (2) any principal in the offense committed any act

8

enacted AB 333, which changed the substantive requirements for proving the gang enhancement.

AB 333 "made the following changes to the law on gang enhancements: First, it narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.' (§ 186.22, subd. (f), italics added.) Second, whereas section 186.22, former subdivision (f) required only that a gang's members 'individually or collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' [AB] 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang. (§ 186.22, subd. (f), italics added.) Third, [AB] 333 also narrowed the definition of a 'pattern of criminal activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense. (§ 186.22, subd. (e)(1), (2).) Fourth, [AB] 333 narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.' (§ 186.22, subd. (g).)" (*People v. Tran* (2022) 13 Cal.5th 1169, 1206.)

Defendant contends, and the Attorney General agrees, that AB 333's amendments to section 186.22 are retroactive to non-final judgments. The Attorney General also concedes that the proof offered at trial does not satisfy

---

specified in subdivision (b), (c), or (d). Thus, a firearm enhancement under section 12022.53, subdivision (e)(1) is dependent on the validity of a gang finding under section 186.22.

the requirements of AB 333. Here, the prosecution relied on minor's stipulation and the prior convictions of defendant, Alvarado, and Yepez to establish the necessary predicate offenses. With the exception of Yepez's offense, the Attorney General concedes that no evidence was presented that the other offenses provided a common benefit to the gang under the amendment to section 186.22, subdivision (e)(1). The Attorney General also acknowledges that the jury instructions did not contain the changes to section 186.22 and the parties never asked the jury to make findings required under AB 333. Therefore the gang and gang-related gun enhancements must be reversed.

The parties disagree, however, whether the allegations may be retried on remand. We agree with the Attorney General that they may. (*People v. E.H.* (2022) 75 Cal.App.5th 467, 480 ["proper remedy for this type of failure of proof—where newly required elements were 'never tried' to the jury—is to remand and give the People an opportunity to retry the affected charges"], citing *People v. Figueroa* (1993) 20 Cal.App.4th 65, 71–72, fn. 2 [statutory amendment retroactively adding additional element to offense allowed prosecution to establish additional element on remand without offending double jeopardy or ex post facto principles]; see also *People v. Sek* (2022) 74 Cal.App.5th 657, 669–670 [gang enhancements may be retried upon remand].) Defendant argues that retrial of the gang allegations is barred because the evidence "will never be sufficient" under the new law because no evidence adduced at trial suggested MMN "derived any financial benefit from the robberies." This argument is speculative. Because nothing beyond a reputational benefit was required at the time of defendant's trial, the prosecution had no incentive to present evidence of a financial benefit. If the

People do not elect to retry defendant, then the trial court shall resentence him accordingly.

> **2. *Any error with regard to failure to bifurcate the trial of the gang-enhancement allegations was harmless.***

Prior to trial, defendant moved to bifurcate trial of the gang enhancements from the underlying charges. The trial court denied the motion, stating that the gang evidence was relevant to establish the "criminal enterprise that the people allege in their case in chief." Defendant contends that the trial court's denial of his motion to bifurcate the gang enhancements constituted prejudicial denial of due process. He also asserts that newly enacted section 1109, which now requires bifurcation upon a defendant's request, applies retroactively and requires reversal of his case.

In cases tried before AB 333 took effect, trial courts had discretion to bifurcate the trial of an underlying offense from the trial of a section 186.22 gang enhancement if the court believed admission of gang evidence would be unduly prejudicial. (See *People v. Hernandez* (2004) 33 Cal.4th 1040, 1048.) AB 333, however, added section 1109, which requires that, if requested by the defense, a gang enhancement charged under section 186.22, subdivision (b) must be tried separately and only after a defendant's guilt of the underlying offense has been established.

In *People v. Tran, supra*, 13 Cal.5th at page 1208, the court recognized that whether section 1109 applies retroactively is the subject of a split of authority among the Courts of Appeal. (Compare *People v. Burgos* (2022) 77 Cal.App.5th 550, 554, review granted July 13, 2022, S274743 ["there are no grounds for treating one section of the bill as prospective-only"] and *People v. Ramos* (2022) 77 Cal.App.5th 1116, 1130 ["section 1109 must apply retroactively to all cases not yet final on appeal"] with *People v. Perez* (2022) 78 Cal.App.5th 192, 207 [Section 1109 does not apply retroactively because it

11

is "is a procedural statute that ensures a jury will not be prejudiced by the introduction of evidence to support gang enhancement allegations—it does not reduce the punishment imposed."] and *People v. Ramirez* (2022) 79 Cal.App.5th 48, 65 [same].) The court did not resolve the split, however, noting instead that "any asserted error in failing to bifurcate was harmless." (*Tran*, *supra*, at p. 1208.) The court rejected the contention that the failure to bifurcate was structural error. (*Ibid*.) The court held that generally the state law harmless error standard under *People v. Watson* (1956) 46 Cal.2d 818 applies except that the federal law standard set forth in *Chapman v. California* (1967) 386 U.S. 18 applies where the admission of the gang evidence in the trial on the substantive offenses rendered the trial fundamentally unfair. (*Tran*, *supra*, at p. 1209.)

We, too, decline to decide the retroactivity of section 1109 because we conclude that any asserted error in failing to bifurcate was harmless. The evidence that defendant committed the home invasion robberies was overwhelming.[4] Although the victims did not identify defendant, the evidence set forth above amply establishes that defendant committed the two robberies. Contrary to defendant's suggestion, the prosecution relied on more than mere possession of the stolen items by defendant and the minor to prove defendant committed the crimes. As set forth more fully above, cell phone evidence placed him within a half-mile of both homes on the days that they were robbed. Ski masks and gloves, a pair of which yielded his DNA, matching those used in the robberies were found in his car. A gun matching the description of that used in both crimes was found in defendant's home.

---

[4] Defendant does not argue that the failure to bifurcate prejudiced the jury's consideration of the charges that he unlawfully possessed a controlled substance and a firearm. In any event, the evidence in support of these offenses was also overwhelming.

Finally, defendant was in the Burlingame home performing work for the homeowner and specifically requested to see the bedroom, where the safe was being installed shortly before the offense.

In addition, some of the gang evidence would likely have been admissible in the guilt phase of a bifurcated trial to establish the relationship between defendant and his minor accomplice. (*People v. Hernandez, supra*, 33 Cal.4th at pp. 1049–1050 ["To the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary."].) As the Attorney General argues, "the gang evidence was relevant to establishing [defendant's] and [the minor's] . . . motivation for committing the crimes with each other."

Finally, compared to the home invasion burglaries charged in this case, the evidence admitted to establish the predicate offenses for the gang allegations was circumscribed. Defendant does not dispute that the predicate offenses committed by the minor, Alvarado and Yepez involved offenses that are significantly less serious than the charged robberies. He contends, however, that that the failure to bifurcate was particularly prejudicial because it allowed the prosecution to admit into evidence defendant's prior assault conviction as a predicate offense. He argues that such evidence would not otherwise have been admissible and that "[a]n assault with a firearm in which great bodily injury was inflicted was a very serious offense – in some respects even more so than the robberies here at issue, in which no firearm was discharged and no great bodily injury was inflicted." While defendant is correct that the gun was not discharged in this case, the victims testified that they were terrified that they were going to be shot. A victim from the San Jose robbery testified that the gun was "pushed . . . into the side of her face

with enough force to break the skin and leave a mark that lasted '[a] few days.' " A victim from the April robbery testified that a robber hit him in the head, leaving his head swollen and tender for "three weeks to a month" after the robbery. In contrast, as defendant acknowledges, the court only permitted admission of the existence of the conviction with no underlying facts, thereby limiting the potential prejudice of the evidence.[5]

The prosecutor's use of the gang evidence here did not render the trial "fundamentally unfair." To the contrary, defendant's guilt was established almost entirely by evidence unrelated to the gang evidence. Accordingly, the *Chapman* standard does not apply. Applying the *Watson* standard, we conclude that given the overwhelming evidence of guilt, it is not reasonably likely that a bifurcated trial would have changed the jury's verdict.

Accordingly, defendant's convictions must be affirmed.

---

[5] Contrary to defendant's argument, the trial court did not err in admitting defendant's prior conviction as a predicate offense. As the Attorney General notes, the prosecution is not necessarily restricted in the number of predicate offenses they can attempt to prove. (*People v. Tran* (2011) 51 Cal.4th 1040, 1049 ["[A]lthough the court need not limit the prosecution's evidence to one or two separate offenses lest the jury find a failure of proof as to at least one of them, the probative value of the evidence inevitably decreases with each additional offense, while its prejudicial effect increases, tilting the balance towards exclusion. And the trial court of course retains discretion to exclude details of offenses or related conduct that might tend to inflame without furthering the purpose for admitting the evidence."].) By sanitizing the conviction, the court largely eliminated any potential undue prejudice in this case. To the extent defendant argues his prior conviction was improperly admitted to prove his "motive and intent" (see Evid. Code, § 1101, subd. (b)), we find no prejudicial error. The evidence was properly admitted as a predicate offense and, in closing argument, the prosecution relied on the conviction only for that permissible purpose.

### 3. *Sentencing errors identified by the parties shall be corrected on remand.*

The parties have identified several sentencing errors to be corrected on remand. They agree that the court should not have imposed the 10-year firearm enhancement attendant to count 13 because it was not submitted to the jury. They also agree defendant is entitled to presentence custody credits for 1,661 days based on the date of his arrest, and 249 days of conduct credit. The parties also identify several errors in the abstract of judgment and related minute orders. These errors also shall be corrected on remand. We do not address the parties' additional arguments regarding the sentence imposed on the section 12022.53, subdivision (e) gang-related gun enhancements as the true findings on those enhancement allegations have been reversed.

## Disposition

The gang enhancements under section 186.22, subdivision (b) attendant to counts 1, 2, 5, 6 and 8 and the section 12022.53, subdivision (e)(1) gang-related firearm enhancements attendant to counts 1, 2, 11 and 12 are vacated and the matter remanded for further proceedings. On remand, the court shall strike the 10-year firearm enhancement imposed under count 13 and recalculate defendant's custody credits. The judgment is affirmed in all other respects.


WHITMAN, J.*

WE CONCUR:

BROWN, Acting P. J.
GOLDMAN, J.

---

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15