Filed 5/28/25  P. v. Pelton CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SEAN MICHAEL PELTON,<br><br>Defendant and Appellant. | F088056<br><br>(Super. Ct. No. F21903486)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Alvin M. Harrell III, Judge.

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, and Hannah Janigian Chavez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 2024, a jury convicted appellant Sean Michael Pelton of grand theft of catalytic converters belonging to AT&T (Pen. Code, § 487, subd. (a);[1] count 1). The jury also convicted appellant of attempted grand theft of catalytic converters also belonging to AT&T (§§ 664, 487, subd. (a); count 2). Appellant was sentenced to county jail for three years four months.

At the time of these convictions, appellant was already serving a sentence stemming from a criminal judgment imposed against him in Amador County Superior Court (case No. 21-CR-30403-01). The sentencing court in this matter consolidated appellant's judgment so that he received an aggregate term of 14 years. Appellant was ordered to serve 10 years in local jail custody, with the remaining four years on mandatory supervised release.[2]

Appellant's opening brief raises a single issue. He contends the trial court in this matter erred when it permitted the jury to hear about two prior convictions in which he stole catalytic converters from AT&T. We conclude the trial court did not abuse its discretion, and any presumed error is harmless. We affirm.

## BACKGROUND

Appellant represented himself at this trial. He presented no evidence on his own behalf. On appeal, he does not challenge the sufficiency of the evidence supporting his judgment. At trial, the prosecutor established the following.

---

[1]    All future references are to the Penal Code unless otherwise noted.

[2]    In June 2024, the Third Appellate District issued an unpublished opinion in appellant's criminal case from Amador County Superior Court in case number 21-CR-30403-01. Based on evidentiary error and a lack of substantial evidence, the Third Appellate District reversed appellant's felony convictions for approximately 27 counts of grand theft of personal property. (*People v. Pelton* (June 27, 2024, C098246 [nonpub. opn.].)

## I.  The Theft of Catalytic Converters on December 26, 2020.

On December 26, 2020, approximately 20 catalytic converters were stolen from vehicles inside the corporate yard of AT&T in Clovis, California.  A hole had been cut in the perimeter fencing.  Surveillance footage showed a single suspect enter the yard and get under the vehicles in question.  The subject was first seen at around 9:00 p.m. and he left the yard at about 12:50 a.m.

## II.  The Attempted Theft of Catalytic Converters on January 4, 2021.

On January 4, 2021, a silent alarm activated at the same AT&T yard in Clovis.  At around 1:57 a.m., law enforcement officers responded and set up a perimeter around the yard.

Appellant's vehicle was parked next to the AT&T yard.  Its hood was still warm.  Two holes had been cut into the fence surrounding the AT&T yard.  One hole in the fence was about 10 to 15 feet from appellant's parked vehicle.

While holding the perimeter, law enforcement spotted a suspect inside the yard.  That suspect generally matched appellant's appearance.  The suspect left the yard, and he was apprehended a short distance away.  It was appellant.  He was the only one in the area.  He was only wearing a T-shirt on a cold night, and he was sweating.

A discarded long-sleeved shirt and hat were found inside the yard.  That discarded shirt and hat matched the clothing seen on the suspect before the suspect fled the yard after police arrived.  A responding officer testified at trial that he had no doubts it was appellant who was the suspect seen inside the AT&T yard.  Another responding officer told the jurors that he believed appellant matched the suspect seen inside the AT&T yard because he was a "[h]eavyset adult male wearing dark clothing."

Surveillance footage from AT&T on the night that this attempted theft occurred showed a single suspect getting under various AT&T trucks.  There was nobody else seen in the yard.

A Sawzall was found inside the AT&T yard near one of the holes cut in the fence. A Sawzall, along with blades and batteries, were found inside appellant's vehicle. A Sawzall is "the number one tool used to cut off catalytic converters."

## III.    The Value of the Stolen Catalytic Converters.

At trial, Joshua Culwell testified that he oversees the management and operations of the AT&T facilities in the Central Valley. According to Culwell, 20 catalytic converters were stolen from AT&T in the early morning hours of December 26, 2020, at the Clovis yard. Culwell testified that he oversees repairs of AT&T trucks. He told the jury that, on average, it cost about $2,000 to replace each stolen catalytic converter. This included both the part and labor.

## IV.    The Information Retrieved from Appellant's Cellular Phone.

At trial, a detective explained to the jurors that three photographs were located on appellant's cellular phone that were of interest. According to the detective, the three pictures showed the parking lot of the Fresno County Social Services Department. This parking lot shared a fence with the AT&T yard that was the target of these crimes. According to the detective, three pictures on appellant's phone were taken only "a few hours" before the December thefts occurred of the catalytic converters in that AT&T yard. Law enforcement calculated the date and time these pictures were taken based on the metadata associated with these images on appellant's cellphone.

On December 31, 2020, someone did an Internet search on appellant's cellphone for the "best payout" for scrap catalytic converters. This search on appellant's phone occurred a "couple of days" after the December 2020 theft at the Clovis yard but before the attempted theft in January 2021 at that same yard.

On the night of the attempted theft, someone searched for a "police scanner" on appellant's phone. Appellant's phone received a text message about someone being able to listen to the police scanner.

4.

Law enforcement found text messages on appellant's cellular phone that demonstrated he was planning these thefts with someone else. Appellant and this other person discussed a new ("Virgin") AT&T yard in Santa Barbara. At trial, a detective opined that the messages recovered from appellant's phone suggested that appellant had been planning to steal from AT&T.

## V. Appellant's Request to Discharge his Appellate Counsel.

After appellant's counsel filed the opening brief in this matter, appellant personally filed a letter with this court on February 19, 2025. Appellant requested that we discharge his counsel. Appellant sought leave to represent himself on appeal and file a supplemental brief. On February 24, 2025, this court denied appellant's request to discharge his counsel, to represent himself on appeal, and to file his own supplemental brief.

On March 17, 2025, appellant personally filed a motion to discharge his attorney and to have another attorney appointed to represent him. On May 28, 2025, this court denied appellant's motion due to his failure to demonstrate ineffective assistance of counsel.

## DISCUSSION

## I. The Trial Court Did Not Abuse Its Discretion in Permitting Admission of Appellant's Two Prior Convictions and any Presumed Error is Harmless.

Prior to the start of this trial, the prosecutor sought leave to introduce two of appellant's prior convictions. The prosecutor informed the court that appellant had previously suffered convictions "in at least 9 separate cases" involving thefts of catalytic converters from AT&T yards all around the state. The prosecutor said this was "a [textbook case] of modus operandi." According to the prosecutor, the two selected prior convictions involved appellant being "arrested either inside or fleeing from AT&T yards following catalytic converter thefts from AT&T work trucks, which is exactly the same set of facts that we have in this particular case."

Appellant objected, contending his prior convictions were too "inflammatory."

The trial court ruled that the prosecutor could introduce three of appellant's nine prior convictions. According to the court, appellant's prior convictions were "highly probative" as they involved the "same type of behavior" charged in the present matter, and they showed identity, and a common plan or scheme.

At trial, the jury heard about two of appellant's prior convictions involving theft of catalytic converters from AT&T. The jury learned that, in June 2020, a patrol officer for the Merced Police Department detained appellant and another suspect at an AT&T yard at around 2:05 a.m. When detained, appellant had been inside the AT&T yard. Two freshly cut catalytic converters were on the ground. Appellant's vehicle was parked next to that yard. Inside appellant's vehicle were about 34 saws and battery chargers for handheld saws, along with gloves and other batteries. A Sawzall was located inside appellant's vehicle. Appellant stipulated with the prosecutor that he had suffered a conviction for grand theft in Merced County for stealing catalytic converters which had belonged to AT&T. That prior theft occurred on or about June 19, 2020.

Appellant also stipulated in this trial that he had suffered a conviction for grand theft for stealing a catalytic converter from a 2016 Ford F150, which had belonged to AT&T. That prior theft occurred on or about May 22, 2020. This conviction was from the Sacramento County Superior Court. The jury did not receive any additional details about appellant's conviction in Sacramento County.

## A.     *The standard of review.*

An abuse of discretion standard is used to review a trial court's rulings under Evidence Code sections 1101 and 352. (*People v. Davis* (2009) 46 Cal.4th 539, 602.) Under this standard, we will not disturb the trial court's ruling on appeal unless " 'the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v.*

6.

*Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125; see *People v. Williams* (1998) 17 Cal.4th 148, 162 [abuse of discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)

Appellant argues that his judgment of conviction must be reversed because the trial court permitted admission of his prior misconduct. He contends that the court abused its discretion, and this evidence rendered his trial fundamentally unfair in violation of his due process rights.

We reject appellant's arguments and find no abuse of discretion. In any event, we also conclude that any presumed error was harmless.

**B.** *The trial court did not abuse its discretion.*

Generally, a defendant's prior criminal act may not be used as evidence of a disposition to commit a pending criminal allegation. (Evid. Code, § 1101, subd. (a).) However, such evidence is admissible to prove some fact other than a disposition to commit crimes, such as motive, opportunity, intent, preparation, plan, or knowledge. (*Id.*, at subd. (b); *People v. Davis, supra,* 46 Cal.4th at p. 602.)

To establish criminal intent, " 'the prior conduct and the charged offense need only be sufficiently similar to support the inference that defendant probably harbored the same intent in each instance.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1194, quoting *People v. Yeoman* (2003) 31 Cal.4th 93, 121; accord, *People v. Ewoldt* (1994) 7 Cal.4th 380, 402 (*Ewoldt*).)

To establish a common scheme or plan, "a greater degree of similarity is required than to show intent." (*People v. Davis, supra,* 46 Cal.4th at p. 602.) The " 'common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual.' (*Ewoldt, supra*, 7 Cal.4th at p. 403.)" (*People v. Davis, supra,* at p. 602.)

To prove identity, the prior misconduct and the current allegations must have the greatest degree of similarity. (*Ewoldt, supra,* 7 Cal.4th at p. 403.) "For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.] 'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' [Citation.]" (*Ibid*.)

In this matter, the prosecutor alerted the trial court that appellant had suffered nine prior convictions around the state for theft of catalytic converters from AT&T. The court permitted the prosecutor to introduce evidence regarding three of those convictions, but the prosecutor ultimately only introduced into evidence two of appellant's prior convictions. These two prior convictions were incurred less than one year before the charged conduct occurred in this matter.

Appellant's behavior demonstrates a distinctive pattern wherein he targets AT&T vehicles in order to steal catalytic converters. The fact that appellant's prior misconduct and the current charges involved the theft of catalytic converters from the same victim, with similar methods of execution, amply suggests appellant's common scheme or plan.

Appellant's prior convictions occurred recently enough to retain significant probative value, minimizing concerns that they were outdated or irrelevant. His prior misconduct supports a reasonable inference that his presence at the AT&T yard on the nights in question was not the result of mistake or coincidence. This evidence was particularly probative in refuting any claim of mistaken identity or absence of criminal intent. In sum, appellant's prior convictions were highly relevant and probative in this case because they had a "tendency in reason" to prove disputed facts that were of consequence to the determination of this action. (Evid. Code, § 210.) Accordingly, we discern no abuse of discretion when the trial court permitted the prosecutor to introduce into evidence appellant's two prior convictions. As the trial court correctly noted, this

evidence reasonably suggested appellant's plan, and his identity as the perpetrator of the crimes charged in this matter. (See *id*., at § 1101, subd. (b).)

Appellant argues that, because his prior acts "were identical" to his charged conduct, the trial court should have prevented its admission under Evidence Code section 352. According to appellant, evidence of his prior conduct unfairly portrayed him "as a criminal who was disposed to stealing catalytic converters[.]" He asserts that this evidence should have been excluded under Evidence Code section 352. We disagree.

"Under Evidence Code section 352, the probative value of a defendant's prior acts must not be substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Davis, supra,* 46 Cal.4th at p. 602.) Evidence is substantially more prejudicial than probative only if it poses an intolerable risk to the fairness of the proceedings or the reliability of the outcome. (*People v. Waidla* (2000) 22 Cal.4th 690, 724.)

There is inherent prejudice from evidence a defendant committed an offense on a prior occasion. (*People v. Tran* (2011) 51 Cal.4th 1040, 1047.) However, Evidence Code section 352 requires the exclusion of evidence "only when its probative value is *substantially* outweighed by its prejudicial effect." (*People v. Tran, supra,* at p. 1047.)

Here, evidence of appellant's identical criminal behavior was highly probative in this matter, and any prejudicial effect was not substantially outweighed by its very strong probative value.

With CALCRIM No. 375, the jury was given a limiting instruction regarding how to use the evidence of appellant's prior convictions. The jurors were told not to conclude from this evidence that appellant had a bad character or was disposed to commit crime. The jurors were instructed that, if they concluded appellant committed the prior crimes, "that conclusion is only one factor to consider along with all the other evidence" and the prior offenses "are not sufficient by themselves to prove that [appellant] is guilty [of the

9.

two charges] in this case. The People must still prove each charge in this case beyond a reasonable doubt."

Given the limiting instruction provided, the prejudicial effect of appellant's prior convictions did not substantially outweigh their significant probative value. The prior convictions involved no violence or weapons, and there was no indication that the jury relied on them for improper purposes. Nothing in the record suggests the jury sought to punish appellant for his past conduct. Additionally, this evidence did not result in an undue consumption of time or pose a risk of misleading the jury.

Based on this record, appellant's two recent prior convictions were admissible at trial to establish his criminal intent and a plan, and to show an absence of an accident or a mistake. (See *Ewoldt, supra,* 7 Cal.4th at p. 404.) Given their high probative value, the prior convictions were not unduly prejudicial. We discern no abuse of discretion when the trial court failed to exclude the evidence of appellant's prior convictions based on Evidence Code section 352.

### C.    *Any presumed error is harmless.*

Appellant argues that the court's error denied him his federal due process right to a fair trial. As such, he contends that we must review prejudice under the federal standard of *Chapman v. California* (1967) 386 U.S. 18. In the alternative, appellant asserts that, even under the state standard of *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*), his judgment must be reversed. We disagree.

The California Supreme Court has repeatedly held that the application of the ordinary rules of evidence does not generally violate a defendant's federal constitutional rights. (See *People v. Lindberg* (2008) 45 Cal.4th 1, 26; *People v. Kraft* (2000) 23 Cal.4th 978, 1035; *People v. Cudjo* (1993) 6 Cal.4th 585, 611.) The erroneous admission of prior uncharged acts is subject to harmless error review under *Watson*. (*People v. Malone* (1988) 47 Cal.3d 1, 22; see also *People v. Hendrix* (2013)

10.

214 Cal.App.4th 216, 248.)  Under *Watson*, we ask whether it is reasonably probable appellant would have obtained a more favorable result absent the alleged error.  (*Watson, supra,* 46 Cal.2d at p. 836.)  In this matter, the answer to that question is "no."

Overwhelming evidence established appellant's guilt for the attempted theft on January 4, 2021.  Law enforcement officers arrested appellant near the AT&T yard that night after a silent alarm was activated.  Surveillance footage from AT&T on the night that this attempted theft occurred showed a single suspect getting under various AT&T trucks with a Sawzall.  There was nobody else seen in the yard.

Two officers testified at trial that appellant matched the appearance of the single suspect who had been spotted inside the yard.  Appellant had a Sawzall in his vehicle, which was parked near one of the holes cut in the AT&T fence.  A Sawzall is "the number one tool used to cut off catalytic converters."  The hood on appellant's vehicle was warm, which indicated he had recently driven to that location.

Strong and compelling evidence demonstrated appellant's guilt for the theft on December 26, 2020.  Three photographs recovered from appellant's phone showed he was present at the same AT&T yard on the night 20 catalytic converters were stolen there.  On the night of the thefts, only a single suspect entered the yard.

Messages on appellant's phone showed he was planning to steal catalytic converters from AT&T.  He was scoping out various yards, he was looking for a buyer of stolen catalytic converters, and he was trying to find information on how to monitor law enforcement over police scanners.

Based on this record, it is not reasonably probable appellant would have obtained a more favorable result had the trial court precluded the prosecutor from introducing evidence of appellant's prior convictions.  The totality of the evidence established beyond any reasonable doubt that appellant was the perpetrator of the December 2020 theft and the attempted theft in January 2021.  Therefore, appellant's arguments regarding

11.

prejudice are unpersuasive.  Reversal of his judgment is not warranted, and this claim fails.

## **DISPOSITION**

The judgment is affirmed.


LEVY, Acting P. J.

WE CONCUR:


PEÑA, J.


MEEHAN, J.