Filed 11/12/24  P. v. Garcia CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　v.<br><br>HUMBERTO GARCIA,<br><br>　　Defendant and Appellant. | G063919<br><br>(Super. Ct. No. RIF1801882)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, F. Paul Dickerson, III, Judge.  Affirmed.

James R. Bostwick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Joshua Trinh, Deputy Attorneys General, for Plaintiff and Respondent.

\* 　　　\* 　　　\*

## INTRODUCTION

A jury convicted Humberto Garcia, as charged, of two counts of committing a lewd and lascivious act upon a child under 14 years of age in violation of Penal Code section 288, subdivision (a) (section 288(a)). The jury found to be true allegations that Garcia took advantage of a position of trust and confidence to commit the crimes. The trial court sentenced Garcia to the low term of three years on count 1 and a concurrent term of three years on count 2.

Garcia challenges his conviction on the ground the trial court erred by receiving into evidence five pornographic images and the names of pornography websites found on his cell phone. He argues that evidence was inadmissible because it was of uncharged conduct, was irrelevant, and was offered to attack his character. He also argues that evidence, if relevant, should have been excluded under Evidence Code section 352.

We conclude (1) the evidence of the pornographic images and pornography website names was relevant to prove the intent required for a conviction under section 288(a) and (2) the trial court did not abuse its discretion in deciding not to exclude that evidence under Evidence Code section 352. Accordingly, we affirm.

## FACTS

In 2010, when Jane Doe Y.P. (Jane Doe) was about nine years old, she, her mother, and three siblings were living in a studio unit on Garcia's property. Garcia, who was 61 at the time of trial, lived with his family in a separate one-story house on the property. Jane Doe's family lived in the studio unit for about three years.

2

Jane Doe's family and Garcia's family became close and often spent time together in Garcia's house. Jane Doe frequently went to Garcia's house to play with Garcia's children, whom Jane Doe referred to as her cousins.

Although Jane Doe got along well with Garcia's children, she did not get along with Garcia because he "would do things that . . . should not have happened," such as kissing her on the lips. The first time he kissed her on the lips was in the hallway of his house. The kisses would last a few minutes, and Jane Doe could feel Garcia's tongue on her tongue. The kisses made Jane Doe feel "gross," but if she asked Garcia to stop, he "would just keep going." Sometimes Jane Doe tried to push Garcia, but when she did, he would hold her or grab her shoulders.

Garcia often kissed Jane Doe, probably more than 10 times. She believed she was 10 or 11 years old when the kissing occurred. Garcia told Jane Doe "everything will be okay, . . . no one needs to know." That made Jane Doe feel "[n]ot good."

On one occasion, when Jane Doe felt sick, Garcia took her to the kitchen where he gave her a pill. While in the kitchen, Garcia slightly moved Jane Doe's tank top, and touched and kissed her breast. Jane Doe felt "gross." She did not tell Garcia's children because she "didn't know how to say it." She did not tell her mother because she "didn't know how to tell her" and "didn't know how to bring it up." Jane Doe was scared that Garcia would do something worse to her. Jane Doe's mother did notice, however, that Jane always wanted to be with her when they were at Garcia's house.

When Jane Doe was about 13 years old, she and her family moved out of the studio on Garcia's property and into an apartment. When Garcia and his family would visit, Jane Doe tried to stay away from him.

When nobody was around, Garcia would ask Jane Doe to come over to him, but she would refuse.

While in middle school, Jane Doe began cutting herself because her mother was struggling and because of what Garcia had done to her. The school noticed Jane Doe's cuts and contacted her mother. Later, at home, Jane Doe and her mother talked for several hours about why Jane Doe was cutting herself. Jane Doe talked about missing her father and about her grandmother's death. At the end of the conversation, Jane Doe, in tears, told her mother about what Garcia had done to her. Jane Doe's mother contacted the police. Two police officers went to their home, and Jane Doe's Mother told them about her conversation with Jane Doe.

Police seized Garcia's cell phone pursuant to a search warrant. A search of the cell phone uncovered 45 pornographic images and the names of 11 pornography websites visited by Garcia. The website names were: 18inhd.com; 18schoolgirlz.com; 18yoga.com; Freeteen.com; Teenmassageporn.com; teenporntuber.net; EXXXextrasmall.com; 18andabused.com; Teenmassageporn.com; Smallteensbigcocks.com; and Horny18years.com. The girls on many of the images appeared to include minors or adult woman made to appear underage. Five of the 45 images were received into evidence as exhibits 6-11 after the models' eyes and private parts had been blacked out.

A search of Garcia's home uncovered a VHS tape entitled "Teen Nymphos No. 7." A photograph of the VHS tape was received into evidence as exhibit A. The tape itself was not received into evidence; instead, the investigating police sergeant testified to its contents. The sergeant testified the VHS had four scenes depicting pornographic acts and each scene involved a young woman made to appear underage.

4

# DISCUSSION

## I.

### BACKGROUND

Before trial commenced, the court and counsel discussed in chambers admission of the pornographic images and pornography website names found on Garcia's cell phone. On the record, the trial court ruled the website names would be received into evidence under Evidence Code section 1101, subdivision (b) because they were relevant to Garcia's intent, that, is "he's interested in little girls." The court declined to exclude evidence of the website names under Evidence Code section 352 because they were not "especially inflammatory, given the nature of the conduct in this case," it would not take "an undue consumption of time for the officer to testify," and the evidence was "extremely probative versus the prejudicial effect it would have on [Garcia]."

The prosecutor explained he had selected five out of the 45 pornographic images to show to the jury. Defense counsel objected because it could not be proven the girls in the images were underage and the prosecution had dropped the counts of possession of child pornography. After examining the images, the court ruled the images would be received into evidence under Evidence Code section 1108, subdivision (b) because the models appeared to be "prepubescent to just barely pubescent girls" and looked "almost exactly like the victim in this case." The images were relevant to show what Garcia "is attracted to."

5

The court ruled the five images were not made inadmissible by Evidence Code section 352 because, the court explained: "I don't think this will take, again, an undue consumption of time. He was looking at these during the time that he was committing the acts, so they're close in time. And it's highly probative. I don't think its prejudicial at all, really."

## II.

### THE TRIAL COURT DID NOT ERR BY ADMITTING THE PORNOGRAPHY EVIDENCE

#### A. *Relevant Law and Standard of Review*

Character evidence is generally inadmissible to prove a defendant's conduct on a specific occasion. (Evid. Code, § 1101, subd. (a).) However, evidence of an uncharged crime or other act is admissible when relevant to prove some fact, such as motive or intent, other than the defendant's disposition to commit such an act. (Evid. Code, § 1108, subd. (b).) "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402 (*Ewoldt*).) "In order to be admissible to prove intent, the uncharged conduct must be sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance." [Citations.]'" (*Ibid.*)

If evidence of uncharged conduct is sufficiently similar to the charged crimes to be relevant to prove the defendant's intent, then the trial court must consider whether to exclude the evidence under Evidence Code section 352. (*People v. Foster* (2010) 50 Cal.4th 1301, 1328.)

Rulings made under Evidence Code section 1101 and 352 are reviewed under the abuse of discretion standard. (*People v. Foster, supra*, 50 Cal.4th at p. 1328.) We "do not disturb the trial court's ruling unless it was

arbitrary, capricious, or made in a "'patently absurd manner that resulted in a manifest miscarriage of justice.'"" (*People v. Thomas* (2023) 14 Cal.5th 327, 358.)

B. *The Pornography Evidence Was Admissible to Prove Intent*

The trial court did not abuse its discretion in concluding the five pornographic images and the pornography website names were admissible under Evidence Code section 1101, subdivision (b) as evidence relevant to proving intent. The intent to sexually arouse either the defendant or the victim is an essential element of a violation of section 288(a). (*People v. Panah* (2005) 35 Cal.4th 395, 488.) "If [the] intent of the act, although it may have the outward appearance of innocence, is to arouse. . . the lust, the passion or the sexual desire of the perpetrator it stands condemned by the statute. . . ." (*People v. Martinez* (1995) 11 Cal.4th 434, 444.)

The prosecution must prove all necessary elements of the crime beyond a reasonable doubt. (*Victor v. Nebraska* (1994) 511 U.S. 1, 5; *People v. Loy* (2011) 52 Cal.4th 46, 72.) Garcia pleaded not guilty to all charges. "Defendant's intent to violate section 288 was put at issue when he pleaded not guilty to the crimes charged" (*People v. Memro* (1995) 11 Cal.4th 786, 864 (*Memro*)), unless he took some action to narrow the prosecution's burden of proof (*People v. Daniels* (1991) 52 Cal.3d 815, 857-858). Garcia does not assert or cite to anyplace in the record to show he took some action to narrow the prosecution's burden of proof.

The five images and the website names were relevant to prove that Garcia kissed and touched Jane Doe with the lascivious intent required to convict under section 288(a). The images depicted pornographic scenes involving underage females or females made to appear underage. The trial court, after examining the images, found the models "look like prepubescent

7

to just barely pubescent girls. I would put them at . . . 13, 11 to 13." The website names suggest they offer pornographic videos involving females who are, or made to appear to be, 18 years of age or younger. From the images and website names, a reasonable inference could be drawn that Garcia was sexually attracted to and sexually aroused by underage, prepubescent girls, and, therefore, Garcia kissed and touched Jane Doe with the intent of becoming sexually aroused, and not for an innocent purpose.

*Memro, supra*, 11 Cal.4th 786 is on point. In *Memro*, the California Supreme Court concluded that magazines and photographs depicting clothed and unclothed males ranging in age from prepubescent to young adult were admissible under Evidence Code section 1101, subdivision (b) to show the defendant's intent to molest a young boy in violation of section 288(a). (*Memro* at p. 864.) "Although not all were sexually explicit in the abstract, the photographs, presented in the context of defendant's possession of them, yielded evidence from which the jury could infer that he had a sexual attraction to young boys and intended to act on that attraction. [Citation.] The photographs of young boys were admissible as probative of defendant's intent to do a lewd or lascivious act with [the victim]." (*Id.* at pp. 864-865; see *People v. Avila* (2014) 59 Cal.4th 496, 519 ["Evidence that defendant possessed child pornography, and that the day before the murder he printed out a story involving an adult male having sex with young children, was probative of defendant's intent to commit lewd acts on the young murder victim in this case"].) In the present case, the five images and website names were similarly probative of Garcia's intent to commit lewd acts on Jane Doe.

Garcia attempts to distinguish *Memro* by arguing the prosecution used the five images and websites names as a basis for attacking his character. The record does not support that argument. To the contrary, the

8

prosecutor argued in closing that the evidence of pornography "goes to his sexual interest in underage girls."

Moreover, the trial court gave a limiting instruction that the evidence that Garcia "possessed and viewed pornography of what appeared to be underaged girls" could be considered only "for the limited purpose of deciding whether:  A, the defendant acted with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child; or B, the defendant's acts were not the result of mistake or accident."  The court also instructed the jury: (1) it could consider the pornography evidence "only if the People have proved by a preponderance of the evidence that the defendant in fact committed the acts"; (2) not to conclude from the pornography evidence "the defendant has a bad character or is disposed to commit crime"; (3) if the jury did conclude that Garcia did "commit[] the acts" the jury's "conclusion is only one factor to consider, along with all the other evidence"; and (4) the pornography evidence "is not sufficient by itself to prove that the defendant is guilty of Penal Code section 288(a). . . ."

These limiting instructions, which we presume the jury understood and followed (*People v. Lamb* (2024) 16 Cal.5th 400, 426), "minimized any danger that the jury would rely upon the evidence for an improper purpose" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1120).

Garcia argues intent was not a material issue at trial because he did not dispute that the alleged conduct, if proven, would in itself establish a lascivious intent.  He cites to *Ewoldt* for the proposition that evidence of uncharged misconduct is inadmissible to prove intent in cases in which, due to the nature of the charged conduct, lascivious intent "could not reasonably be disputed." (*Ewoldt, supra*, 7 Cal.4th at p. 406.)  In *Ewoldt*, the victim

9

testified that the defendant repeatedly molested her by fondling her breasts and genitals and forcing her to touch his penis. (*Ibid*.) Garcia's conduct, though punishable under section 288(a), was not as egregious. The conduct involved here—kissing and one instance of touching Jane Doe's chest—was of such nature that if proven would not place completely beyond dispute the element of Garcia's intent.

Garcia argues the images and website names were irrelevant because no proof was presented to show that men who possess child pornography will molest children. The inference to be drawn from the five images and website names was that Garcia was sexually attracted to young, prepubescent girls and therefore kissed and touched Jane Does with the intent to achieve sexual arousal.

## C. *Evidence Code Section 352 Did Not Make the Pornography Evidence Inadmissible*

Nor did the trial court abuse its discretion by declining to exclude the five images and website names under Evidence Code section 352. The trial court in its discretion may exclude otherwise relevant under Evidence section 352 if the probative value of the evidence is substantially outweighed by the probability that its admission will "necessitate undue consumption of time" or will "create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "Unless the dangers of undue prejudice, confusion, or time consumption '*substantially outweigh*'" the probative value of relevant evidence, a[n] [Evidence Code] section 352 objection should fail." (*People v. Doolin* (2009) 45 Cal.4th 390, 439, italics added.)

10

"'Prejudice for purposes of Evidence Code section 352 means evidence that tends to evoke an emotional bias against the defendant with very little effect on issues, not evidence that is probative of a defendant's guilt." (*People v. Tran* (2011) 51 Cal.4th 1040, 1048.)

As we have explained, the five images and the website names were highly probative of Garcia's intent in kissing and touching Jane Doe. Intent was an element of the offense of violating section 288(a) which the prosecution was required to prove. Only five out of 45 images were received into evidence, parts of the images were blacked out, and the investigating sergeant testified only to the website names. While there was the risk that admission of the pornography evidence might evoke an emotional bias against Garcia, that risk did not substantially outweigh the probative value of the evidence.

The California Supreme Court in *Memro* addressed the same Evidence Code section 352 issue with respect to the magazines and photographs admitted in that case and concluded: "To be sure, some of this material showed young boys in sexually graphic poses. It would undoubtedly be disturbing to most people. But we cannot say that it was substantially more prejudicial than probative, for its value in establishing defendant's intent to violate section 288 was substantial. The court balanced the items' evidentiary worth against their potential to cause prejudice and determined that the former substantially outweighed the latter. Its decision was reasonable." (*Memro, supra*, 11 Cal.4th at p. 865.)

The trial court here conducted the same balancing test as in *Memro* and its decision was likewise reasonable. In addition, the jury was given limiting instructions, and "'[a] limiting instruction can ameliorate [Evidence Code] section 352 prejudice by eliminating the danger the jury

11

could consider the evidence for an improper purpose.'" (*People v. Gonzalez* (2021) 12 Cal.5th 367, 409.)

Garcia argues admission of the pornography evidence created a substantial danger of confusing or misleading the jury by leading it to believe it had to determine whether the images and websites constituted child pornography. While there is always a risk the evidence of uncharged conduct may confuse or mislead the jury (*People v. Branch* (2001) 91 Cal.App.4th 274, 284), such risk in the present case did not substantially outweigh the probative value of the pornography evidence. The images were relevant, without a finding they constituted child pornography, because they at least depicted females made to look underage. During closing argument, Garcia's counsel emphasized to the jury that Garcia was not being charged with possession of child pornography, no evidence was presented of the ages of the models in the images, and the pornography evidence was a distraction tactic and irrelevant. The prosecutor told the jury specifically that Garcia was charged only with two counts of violating section 288(a).

Further, the trial court's limiting instructions "eliminated any danger 'of confusing the issues, or of misleading the jury.'" (*People v. Lindberg* (2008) 45 Cal.4th 1, 26). "We presume the jury followed these instructions." (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

SANCHEZ, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


GOODING, J.